BURNHAM C. BENNER & another *vs.* ASAHEL D. PUFFER & another.

When, by an agreement for sale, the title is to pass, not upon delivery, but upon a subsequent payment, the vendor, the vendee being in default, may retake the goods from one claiming through the vendee; and the agreement is valid, though the goods were not in existence so as to be a subject of bargain and sale when the agreement was made, if when delivered, they were delivered under the agreement.

TORT for the conversion of furniture and housekeeping goods. The answer denied property in the plaintiff and denied the con-

version, and justified the taking by virtue of a mortgage given by John Mead to one Charles H. Morse, and assigned to the defendants.

At the trial in the Superior Court, before *Allen*, J., the plain-tiffs introduced an auditor's report, from which it appeared that the plaintiffs were dealers in furniture and housekeeping goods, and that in the year 1865 they made a parol contract with Mead and his wife, by the terms of which they were to furnish the Meads with furniture and housekeeping goods, half the purchase money to be paid down, and the rest from time to time, as the Meads were able to pay it. The articles furnished were to remain the property of the plaintiffs until the last cent of the money due on them was paid, and the goods were not to be removed or sold without the plaintiffs' consent. The plaintiffs furnished goods under this contract, from September 29, 1865, to February 15, 1871, to the amount of $1149, payments being made during this period to the amount of $850.95. At the last mentioned date and at the date of this action there was due the plaintiff the sum of $298.06. May 15, 1871, the defendants removed the furniture and goods from the house of the Meads. The goods were taken to an auction room, where the plaintiffs found and identified a considerable portion of them as the goods furnished by them to the Meads under the agreement above stated. The defendants claimed the goods by virtue of a mortgage given by John Mead to Charles H. Morse, February 4, 1869, and assigned to them December 2, 1869. They took possession May 15, 1871, with Mrs. Mead's consent.

It further appeared in evidence that the charges of goods fur-nished to the Meads were entered on various books and ledgers throughout the years mentioned; which books were the records of the plaintiffs' daily sales; and that the goods were of various de-scriptions and prices from ten cents in value to forty-five dollars. The defendants had no knowledge of the agreement between the plaintiffs and the Meads at the time he took the goods.

The defendants contended the contract between the plaintiffs and the Meads was invalid, and that upon this evidence the plaintiffs could not maintain the action. The presiding judge

ruled that the contract was a legal and valid one, and that the evidence was sufficient to maintain the action. The jury returned a verdict for the plaintiffs, and the judge reported the case to this court.

If in the opinion of the court the ruling was correct, the verdict was to stand; if the ruling was erroneous, the verdict was to be set aside and a new trial granted.

*W. H. Bent,* for the plaintiffs.

*T. Wentworth & J. Davis,* for the defendants.

ENDICOTT, J.   This case falls within the numerous decisions of this court on the subject of conditional sales. When, by the agreement of the parties, the property does not vest in the purchaser until the purchase money is paid, the vendor may, if the money is not paid, recover the property from the vendee, or from one who holds it under a mortgage or sale from him. *Coggill* v. *Hartford & New Haven Railroad Co.* 3 Gray, 545, and cases cited. *Gilbert* v. *Thompson,* Ib. 550, n. *Zuchtmann* v. *Roberts,* 109 Mass. 53. By the auditor's report, it appears this sale was on condition that the goods furnished were to remain the property of the plaintiff until all the money due on them was paid. Half the purchase money was to be paid on delivery, which does not appear to have been done, and the balance, as the Meads were able to pay. The goods were not delivered at the time of the contract, but at intervals between September, 1865, and February, 1870, and the auditor expressly finds that they were delivered under the contract. Payments were made from time to time by the Meads. In February, 1870, and at the time this action was brought, a balance of $298 was due to the plaintiff. The condition not having been fulfilled, no title to the goods passed to the Meads, and they could not give a valid mortgage to the defendants.

But the defendants attempt to distinguish this case from the cases cited, and contend that the contract was illegal, because it covers the sale of articles not present or delivered, and which the plaintiffs did not own or possess at the time. But the rule that the sale of goods not in existence, or which do not, either actually or potentially, belong to the vendor at the time, is void, has no

application to this case as presented on the facts. It is immaterial whether the plaintiff had them at the time of the contract or not, the goods having been delivered, and accepted by the Meads under the contract. The conditions of the contract attach to them upon delivery, and the Meads held them on condition that the property should remain in the plaintiffs till the purchase money due under the contract was paid. There does not appear to have been any waiver of the conditions, and the failure of the Meads to pay half the purchase money upon a delivery cannot be so construed, even if assented to by the plaintiffs.

The doctrine of the appropriation of payments is equally inapplicable, as no title passed till the money was all paid.

The rulings of the presiding judge were correct, and there must be *Judgment on the verdict.*