THE STATE *ex rel.* PEIRCE, *Appellant*, v. MERRITT.

1. **Attachment**: INTERVENTION OF BANKRUPTCY PROCEEDINGS: JURISDICTION OF STATE COURT. After property of a debtor had been attached on the ground of fraudulent conveyance, proceedings in bankruptcy were instituted and pressed to an adjudication against the debtor, and the attached property was taken by the assignee out of the sheriff's hands. *Held*, that these facts did not oust the State court of its jurisdiction of an action on the attachment bond brought by the alleged fraudulent purchaser.

2. **Fraud**: SALE OUT OF USUAL COURSE OF BUSINESS. The mere fact that a sale of merchandise was not made in the usual and ordinary course of business, will not necessarily invalidate the sale. The question is one of fraud in fact, and is properly left to the jury.

3. ———: CHANGE OF POSSESSION. As against creditors a sale of goods will be held fraudulent and void unless the vendee takes and retains actual, visible and exclusive possession, such possession as to indicate to purchasers at large that the vendor no longer has control. (Following *Claflin v. Rosenberg*, 42 Mo. 447.)

4. ———: OPPORTUNITIES OF DISCOVERING. It is not the duty of the purchaser to inquire into the motives of the seller for making the sale. *Hence*, he is not chargeable with knowledge of a fraudulent purpose on the part of the seller merely because he failed to avail himself

of an opportunity of making investigations which, if made, would have revealed the purpose.

5. ———: INSOLVENCY OF SELLER. Fraud in a sale cannot be inferred from the mere fact that the seller is insolvent.

6. **Parties**: PARTNERSHIP: ATTACHMENT BOND. Where goods are sold to an individual and are afterwards attached as the property of the seller, and upon claim being made by the vendee, an attachment bond is given for his benefit, he is the proper party to sue on the bond, and not a firm of which he is a member, notwithstanding the goods may have been bought on account of the firm and been paid for by them.

7. **Bankruptcy**: ACTS OF ASSIGNEE AS AFFECTING CREDITORS. The fact that an assignee in bankruptcy has affirmed a sale of goods made by the bankrupt, cannot affect the rights of creditors who, before the institution of the bankruptcy proceedings, have attached the goods for fraud in the sale.

8. **Sale out of Ordinary Course**: EVIDENCE: FRAUD: BANKRUPT LAW, NOT ADMINISTERED BY STATE COURT. The fact that a sale is made by a debtor out of the ordinary course of business, while it is a circumstance tending to prove fraud, will not warrant an instruction to the jury that the sale is *prima facie* fraudulent. Under section 35 of the bankrupt act such an instruction would be proper in proceedings instituted under that act in the Federal court; but in a suit in the State court the matters in dispute are to be determined, not by the bankrupt act, but by the common law and the statutes of the State.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

Merritt, Ronaldson & Co., on the 9th day of October, 1874, sued Brock, Rogers & Co., by attachment, and caused the writ to be levied on certain merchandise. A few days afterwards Peirce claimed this merchandise as having been sold to him on the 7th day of October, 1874, by Brock, Rogers & Co. On the 15th day of October, 1874, Merritt, Ronaldson & Co., with their sureties, gave bond to the State of Missouri in the penal sum of $58,000, conditioned that Merritt, Ronaldson & Co. should indemnify the sheriff and defend all claims brought against the merchandise on this bond. Peirce sued Merritt, Ronaldson & Co. and their

sureties, claiming that the merchandise belonged to him absolutely, and was in his possession when taken by attachment. The damages were laid at $33,874.40.

The answer denied the sale to Peirce; alleged that it was a false and fraudulent contrivance between Brock, Rogers & Co. and Peirce to cheat the creditors of the former, to the profit of the latter, and set up their version of the transaction between Brock, Rogers & Co. and Peirce, which they averred to be grossly and utterly fraudulent. It was further alleged that on the 27th day of October, 1874, proceedings were commenced in the United States district court for the eastern district of Missouri, by the creditors of Brock, Rogers & Co., to procure an adjudication of bankruptcy against Brock, Rogers & Co.; that on the 14th day of November, 1874, Brock, Rogers & Co. were duly adjudicated bankrupts; that on the 17th day of December, 1874, Ronaldson was duly elected their assignee, and all the rights, credits and effects, goods, chattels, &c., of Brock, Rogers & Co., were transferred to said Ronaldson, assignee; that the sale to Peirce was in contemplation of bankruptcy; that it was fraudulently contrived by Brock, Rogers & Co., who were insolvent, to defeat the operation of the bankrupt law and cheat, &c., their creditors, a scheme to which Peirce was a party; that within three months of the sale Brock, Rogers & Co. were adjudicated bankrupts, and that the assignee of Brock, Rogers & Co. did, on the 31st day of December, 1874, demand from the sheriff the merchandise seized by Merritt, Ronaldson & Co., and the sheriff delivered the same to him in compliance with that demand; wherefore, defendant prayed judgment.

There was evidence at the trial, on the part of the plaintiff, tending to show that the sale was made for value and fairly, without notice on the part of plaintiff of any attempt or intention, on the part of Brock, Rogers & Co., to cheat their creditors. There was also evidence, on the part of defendant, tending to show that the sale was made

out of the usual course of trade; that it was secretly made; that it was made in a hurry, with the palpable purpose of getting through certain forms in a short time; that the consideration was most inadequate, and consisted in part of wild lands, of the nature of which Peirce knew that Brock, Rogers & Co. were quite ignorant; and that there was no open, visible and notorious change of possession at the sale. It was in evidence that Peirce knew that the firm was embarrassed, and might have known more if he had not expressly refused to be informed of their condition. The merchandise sold remained, after the sale, in the store which Brock, Rogers & Co. had occupied; the clerks of Brock, Rogers & Co. did not know of the sale until the following day; the invoices were made out secretly and at night; the bill of sale was dated the 7th day of October; Brock went away the same evening, but Rogers remained about the store until the 9th, when the goods were seized and the store closed by the sheriff under the attachment.

It was in evidence that on October 27th, 1874, proceedings were commenced in the United States district court for Missouri by the creditors of Brock, Rogers & Co., by means of which they were adjudicated bankrupts on the 14th day of November, 1874; that on the 17th day of December, 1874, Ronaldson was elected their assignee, that all the rights, credits and effects of Brock, Rogers & Co. were duly transferred to said assignee, that on the 31st day of December, 1874, Ronaldson, assignee as aforesaid, claimed the merchandise seized and held by the sheriff as the property of Brock, Rogers & Co., and subject to be administered under the bankrupt law, and that the sheriff yielded up the property to the assignee without contest.

The court refused an instruction offered by the defendants at the close of the plaintiff's case, that he could not recover. At the end of all the evidence the court gave several instructions for the plaintiff, and following, among other, for the defendants:

3.    If the jury believe from the evidence that at the

date of the sale of the goods in question Brock, Rogers & Co. were insolvent or contemplated insolvency or bankruptcy, and that Peirce, or any person acting for him in the matter, had reasonable cause to believe them to be insolvent, or to be acting in contemplation of insolvency, and knew that said sale was made with a view to prevent their property from being distributed under the bankrupt act, or to evade any of the provisions of said act, then the said sale is void, and the jury will find for the defendants. And if the jury believe from the evidence that said sale was not made in the ordinary and usual course of business of Brock, Rogers & Co., such fact is *prima facie* evidence that said sale was fraudulent.

The court refused the following instructions asked by the defendants:

4. Unless the jury are satisfied from the evidence that Peirce had actual possession of the goods in question, and that the change of possession was visible, continued and exclusive against Brock, Rogers & Co., such a change of possession as to indicate to purchasers at large that said Brock, Rogers & Co. no longer had possession or control of said goods, then the sale was fraudulent and void as against creditors, even though the jury believe from the evidence that the said sale from Brock, Rogers & Co. to Peirce was made in good faith and for a valuable consideration.

7. If the jury believe from the evidence that Peirce, or his agents, either examined the books of account of Brock, Rogers & Co., or had an opportunity to examine them and failed to improve it, and that said books showed the fact that said Brock, Rogers & Co. were indebted to various parties beyond their means of payment, then, in contemplation of law, Peirce had notice that Brock and Rogers were insolvent, and that in making a sale of their goods, which would put their property beyond the reach of their creditors, if the jury believe from the evidence

that they did make such sale, they were acting with intent to hinder, delay and defraud creditors.

8. · If the jury believe from the evidence that the sale of the goods in question was made by Brock, Rogers & Co. with intent to hinder, delay or defraud their creditors, and that Peirce had knowledge of such intent, or could have ascertained by reasonable investigation or inquiry such facts as would lead a prudent man to believe that such was the intent of Brock, Rogers & Co., then said sale was fraudulent and void as against creditors, and they will find for defendants.

9. If the jury believe from the evidence that Thomas and Richard Bainbridge were the partners of Peirce, at Lafayette, Indiana, composing the firm of O. W. Peirce & Co.; that the goods purchased of Brock, Rogers & Co were purchased on account of O. W. Peirce & Co., and paid for by them, then the plaintiff is not entitled to recover, even though the bill of sale was taken in the name of O. W. Peirce.

There was a verdict and judgment for the plaintiff in the sum of $22,244.27, from which defendants appealed to the court of appeals, where the judgment was reversed. Plaintiff then appealed to this court.

*Cline, Jamison & Day* with *G. S. Van Wagoner* for appellant.

1. The instructions on the subject of delivery and possession of goods under the 10th section of the statute concerning fraudulent conveyances, were correctly given. *How v. Taylor*, 52 Mo. 592; *Wright v. McCormick*, 67 Mo. 426; *Bishop v. O'Connell*, 56 Mo. 158; *Claflin v. Rosenberg*, 42 Mo. 439; *Lesem v. Herriford*, 44 Mo. 323.

2. The petition in the suit of the assignee against Peirce, in the United States district court, was competent evidence to show that the creditors had disaffirmed the sale and were not suing Peirce, as they might have done, for the unpaid purchase money.

3.  The State courts did not lose jurisdiction over this case because of the subsequent filing of the petition in bankruptcy against Brock, Rogers & Co., the suit being to recover on a bond of indemnification given by respondents to the State of Missouri, to which bond, not to the property itself, appellant must look for the just compensation awarded him in the verdict of the jury.

4.  Defendants' seventh instruction was properly refused, because :   a.  The law does not impose a duty on the purchaser to inquire or know if the vendor is indebted or free from debt.   b.  The law does not make a sale void when made by an insolvent vendor.   c.  The law does not infer an "intent to hinder, delay and defraud creditors," from insolvency.   *Buckner v. Stine,* 48 Mo. 407; *Sibly v. Hood,* 3 Mo. 290; *Little* v. *Eddy,* 14 Mo. 160.   A debtor may prefer one creditor to another, and may transfer all of his property to one and leave the others wholly unpaid, even though he be in failing circumstances.   *Sibly v. Hood,* 3 Mo. 290; *Murray v. Cason,* 15 Mo. 378.

*George P. Strong* for respondents.

1.  The sale has all the badges of a fraudulent transaction.   It was a secret sale.   It was hastily made.   The consideration of wild land for nearly one-half the amount was most unusual.   The discount was eight times the usual and customary discount.   It was not made in the usual course of trade.   There was no open, visible, notorious change of possession.   *Wright v. McCormick,* 67 Mo. 426; *Claflin v. Strauss,* 42 Mo. 449; *Burgert v. Borchert,* 59 Mo. 80, 85.

2.  The court should have dismissed the suit.   After the attachment was dissolved no action would lie on the claimant's bond.   His only remedy was either a common law action of trespass or replevin, or a proceeding to establish his claim in the bankrupt court.   By the removal of the property attached into the bankrupt court the consid-

eration of the bond was taken away by operation of law. Sess. Acts of 1855, p. 464, § 1; *St. Louis, A. & C. R. R. Co. v. Castello*, 30 Mo. 124; Bump on Bank., (8 Ed.) p. 473, § 5044; Notes on p. 497.

3. The court erred in admitting in evidence the petition in the case of Ronaldson, assignee, against Peirce, in the United States district court. There was no privity between the parties to these different suits. 1 Green. Ev., §§ 189, 190.

4. The court should have given the instruction asked by defendants at the close of plaintiff's case, that on the evidence plaintiff was not entitled to recover. *a.* Because no action would lie on this bond after the dissolution of the attachment by the bankrupt act. *b.* Because plaintiff's testimony showed a sale out of the ordinary course of the business of Brock, Rogers & Co., which made a *prima facie* case of fraud. This was not rebutted by plaintiff's evidence. *c.* There was no sufficient change of possession to constitute a legal sale.

5. The defendants' instruction as to change of possession should have been given as asked. *Claflin v. Strauss*, 42 Mo. 439, 449; *Burgert v. Borchert*, 59 Mo. 80, 85; 1 Wag. Stat., § 10, p. 281; *Allen v. Massy*, 17 Wall. 351; *Bacon v. Scammel*, 9 Cal. 272; *Engles v. Marshall*, 19 Cal. 329; Bump on Fraud. Convey., 174; *Godchaux v. Mulford*, 26 Cal. 316; *Billingsley v. White*, 59 Pa. St. 464; *Parker v. Kendrick*, 29 Vt. 388, 393; *Flannigan v. Wood*, 33 Vt. 346; *Clark v. Morse*, 10 N. H. 236, 239.

6. Defendants' seventh and eighth instructions should have been given as asked. One having information sufficient to lead him to a fact, shall be deemed "conversant of it." *Kennedy v. Green*, 3 My. & K. 719; *Carr v. Hilton*, 1 Curtis (Me.) 393; *Hamilton v. Pettibone*, 10 Nat. Bank. Reg. 172; *Brooke v. McCracken*, 10 Nat. Bank. Reg. 465; citing 20 How. 363; *Scammon v. Cole*, 5 Nat. Bank. Reg. 263.

HENRY, J.—We fully concur with the court of appeals

that the jurisdiction·of the State court over·the subject
matter of the suit, was not determined by
the proceedings in bankruptcy against Brock,
Rogers & Co., and we deem it unnecessary
to add anything to the able ·argument of Judge Gantt on.
that subject, which we refer to and adopt.*

*1. ATTACHMENT: intervention of bankruptcy proceedings: jurisdiction·of State court.*

The court did not err in refusing to instruct the·jury,
at the close of the plaintiff's evidence, that· upon it he·
could not recover.   Conceding that the sale
was not made in the usual and ordinary
course of ·business of Brock, Rogers & Co.,·

*2. FRAUD: sale out of the usual course of business.*

and that such fact· is *prima facie* evidence of fraud, it was
for the jury to determine· whether the evidence offered by
plaintiff did not overcome that *prima facie* case.

The defendants asked the court to give the following
instruction :   " Unless the jury are satisfied from the evi-
dence that Peirce had actual possession of
the goods in question, and that the change

*3. ——: change of possession.*

of possession was visible, continued and exclusive as against
Brock Rogers & Co.; *such a change of possession as to in-
dicate to purchasers at large that said Brock, Rogers & Co. no
longer had possession or control over said goods,* then said .sale
was fraudulent and void as against creditors; *even though the
jury believe from the evidence that said sale from Brock, Rogers
& Co. to Peirce was made in good faith and for a valuable con-
sideration.*"   It was refused as asked, and ·given omitting
the italicized clauses.   The instruction, as refused, was an
exact copy of one asked and refused in the case of *Claflin
v. Rosenburg*, 42 Mo. 447, which this court held should have
been given, remarking, that "the vendee must take actual
possession, and the possession must be open, notorious and
unequivocal, such as to apprise the community, or those
who are ·accustomed to deal with the party, that the goods
have changed hands, and that the title has passed out of
the· seller into the .purchaser."   The same · doctrine was
announced in *Burgert v. Borchert*,·59 Mo. 86. . There was
no instruction given which was equivalent to this, and the

*See *infra*, page 286.

The State ex rel. Peirce v. Merritt.

evidence in relation to the change of the possession of the goods was of a character to justify the demand of that instruction by defendants.

The seventh and eighth instructions asked by defendants were properly refused. They either assume it to be the duty of every purchaser of goods and chattels, upon making a purchase, to inquire into the motives of the vendor for making the sale, or that from the evidence, Peirce had notice of the fraudulent purpose of the vendors, or of such facts as to put him to inquiry in regard to their financial condition. If the first assumption was correct as a legal proposition, the sale and transfer of personal property would be hampered to an extent which would be detrimental to commerce and subversive of the policy which encourages a free and untrammeled traffic in such property.

4. FRAUD: opportunities of discovering

The second assumption would have been an invasion by the court of the province of the jury as declaring that as established, which the jury should have been, as they were, left to find from the other facts proved. Fraud in a sale cannot be inferred from the mere fact that the seller was in debt. That, in connection with other facts, may affect the purchaser with notice of a fraudulent intent on the part of the vendor, although notice may not be directly proved. Even the fact of insolvency alone, if known to the purchaser, may be sufficient to put him upon inquiry; but certainly without some notice of such intention, he is not required, before he purchases personal property, to inquire whether the seller is making sale of the goods in order to defraud his creditors.

5. ——: insolvency of seller.

The court did not err in refusing defendant's ninth instruction. The bond was for the benefit of O. W. Peirce. He was the only person claiming the goods when the bond was executed. He was in possession of the goods when they were seized and taken. They were sold to him individually, whether he was an honest or a fraudulent purchaser. If his partners in Indiana

6. PARTIES: partnership: attachment bond.

had any interest in the property they were not known in the purchase or named in the bond.

We cannot conceive why the petition in the suit of John Ronaldson, assignee of Brock, Rogers & Co., against O. W. Peirce, in the district court of the United States, was offered as evidence by the plaintiff or admitted by the court. It charged, in several counts, that the sale of the goods in question to Peirce, was made by Brock, Rogers & Co. with the intent to defraud their creditors, and that Peirce was a participant in the fraud. It certainly could have been of no advantage to plaintiff, that the assignee of Brock, Rogers & Co. had deliberately charged him with aiding and assisting that company to defraud their creditors by a fraudulent purchase of the goods in question. Plaintiff's counsel contend that it was competent in order "to show that the creditors had disaffirmed the sale, and were not suing Peirce, as they might have done, for the purchase money." The creditors of Brock, Rogers & Co. had the option to sue Peirce for the purchase money, or to seize the goods under attachment or execution, and after a portion of the creditors, before proceedings in bankruptcy were commenced against Brock, Rogers & Co., chose the latter course by a proceeding in the State court, the fact that the assignee in bankruptcy sued Peirce for damages in the district court of the United States, is of no consequence in this case. Neither his affirmance nor disaffirmance of the sale could affect plaintiff's right to redress, if he had any, for the seizure of the property in question in the attachment proceedings. The evidence was irrelevant and should have been excluded, but as it could not have prejudiced the defendant, the judgment should not for that error alone be reversed.

The third instruction for the defendant should not have been given. Section 35 of the bankrupt act makes a transfer of property out of the ordinary course of business of the debtor, *primâ facie* evidence that it is fraudulent, and in proceedings in

*7. BANKRUPTCY: acts of assignee affecting creditors.*

*8. SALE OUT OF ORDINARY COURSE: evidence: fraud: bankrupt law, not administered by State court.*

bankruptcy, or in a suit in the Federal court to recover property fraudulently transferred by the bankrupt, such instruction would be proper; but this is a suit between individuals in the State courts, and the matters in dispute are to be determined, not by the bankrupt law, but by the common law and the statutes of the State. That a sale was made out of the ordinary course of business, as was remarked by the court of appeals, is a circumstance tending to prove fraud, but is no more *prima facie* evidence of fraud than any other fact tending to prove it, and it was, therefore, error to single out that fact and give it prominence over other facts tending in the same direction. That the sale was hurriedly made, that it was kept a secret from the salesmen of Brock, Rogers & Co., that the business sign of Brock, Rogers & Co. was not taken down—either of these facts could as properly have been singled out and declared *prima facie* evidence of fraud. Every fact tending to prove fraud is not of itself *prima facie* evidence of fraud. A circumstance of but slight significance, standing alone, may, in connection with other circumstances, equally insignificant, separately considered, suffice to fix the charge of fraud in a transaction; and the jury should be left free to determine from all the facts proved whether there was fraud in the transaction or not. The judgment of the court of appeals, reversing that of the circuit court, is affirmed. All concur.

Judge Gantt, delivering the opinion of the court of appeals, said: It is claimed by the appellants that the jurisdiction of the State court on the subject matter of this suit was determined by the proceedings in bankruptcy. In this connection the facts are these: Brock, Rogers & Co. being insolvent, made a sale of a large part of their stock, perhaps the whole of it, to Peirce on the 7th day of October, 1874. A creditor of Brock, Rogers & Co. sued them by attachment on the 9th day of October, 1874, charging this sale to have been fraudulent; the attachment was levied on the stock sold. Peirce claimed

the stock as purchased. The creditor gave the sheriff an indemnifying bond and directed him to hold the property as belonging, when attached, to Brock, Rogers & Co. Thereupon Peirce sued the creditor on the bond, and before the end of the month proceedings were commenced in the United States district court under which Brock, Rogers & Co. were adjudicated bankrupts on the 14th day of November, 1874, and their assignee, on the 31st day of December, 1874, claimed the property from the sheriff. That official delivered it to the assignee without a contest; and it is claimed by the creditor who is appellant here, that these circumstances defeated the action of Peirce against him. We cannot perceive the reasonableness of this claim, and think that the creditor has no more ground for making it than he would have had if, after seizing the goods by attachment and removing them to a warehouse of his own selection, they had been consumed by fire. By this action he estopped himself to say when the goods were demanded by the assignee that they were not the property of Brock, Rogers & Co. The sheriff, of course, was in the same position, and it was, therefore, the necessary consequence of the action of the creditor that if proceedings in bankruptcy were commenced and prosecuted to judgment within a given period after the attachment, these goods must without a possibility of dispute, pass into the hands of the assignee in bankruptcy of Brock, Rogers & Co. If the same proceedings having been commenced in bankruptcy, no attachment had intervened and the assignee of Brock, Rogers & Co. had sued Peirce as the fraudulent purchaser of these goods, the latter might have had difficulty in vindicating his right to them under the sale shown by this record; but at any rate he would have been at liberty to aver and prove that sale, and if he could, to uphold its fairness. But no such questions as would then have been legitimately discussed between Peirce and the assignee were possible between that assignee and the attaching creditor. Undoubtedly the attaching creditor, in such a

case occupies a position of peculiar embarrassment.  By his action he has so narrowed the issues that he must either maintain, in a controversy with the purchaser, the invalidity of the sale by which that purchaser claims the goods, or he must respond to him for their full value.  If he succeed in maintaining this invalidity he gains only a trifling advantage when the goods have been seized by the assignee in bankruptcy.  All which victory yields to him in that event, beyond immunity from the claim of the pretended purchaser, will be a slightly increased dividend from the estate of the bankrupt, which, by his exertions, he has augmented.  This seems hard, but the law is clear.  The hardship is due to his own misdirected enterprise, and not to the operation of the statute.  If instead of attaching and seeking to gain a priority over the other creditors, he had invoked the aid of the bankrupt law to enforce an equal division of the property of the insolvent, and to set aside fraudulent conveyances of it, he would probably have been more successful in impeaching the transfer, which is alleged to be fraudulent and certainly would have run no risk of the disastrous consequences which may possibly flow from the adoption of the more direct and energetic course of attachment.  Moreover, he would have had in the courts of the United States the benefit of some rules of evidence which, as we conceive, have no place in the State courts.

What we mean by this is, that whereas the bankrupt act declares that certain facts shall be taken as establishing a certain *prima facie* legal presumption, thus assuring to the assignee in bankruptcy seeking to collect the assets of the bankrupt, the benefit of a rule, which, unless positively encountered and overthrown by countervailing evidence, will be conclusive, no such artificial effect can be claimed for the same facts by either party to a contest not looking to enforcement of the bankrupt act.  If a party being insolvent, or in contemplation of bankruptcy, makes a transfer or conveyance of any part of his property to a

person having reasonable cause to believe him to be insolvent, &c., the transfer, &c., if assailed under the provision of the bankrupt law, will be void, and the fact that such transfer, &c., is not made in the ordinary course of business of the debtor shall be *prima facie* evidence that it is fraudulent. (§ 55 of the bankrupt act as amended in 1874.) The circumstances here instanced by the statute as constituting fraud *prima facie* are of a nature to induce suspicion without reference to the statute, and between A and B conducting a controversy respecting the property transferred, either party desiring to show the fraudulent nature of the transfer, will be at liberty to adduce the fact that the transfer was not made in the usual and ordinary course of business of the debtor. Such evidence will be admissible for that purpose as evidence of any other relevant fact will be admissible. Yet in administering justice in the State courts between two parties, neither of whom is attempting to enforce the bankrupt act, it would, we conceive, be erroneous for the courts to single out this circumstance and tell the jury what it, unconnected with other circumstances, would establish, and perhaps, also, if this and nothing more was the evidence on the charge of fraud, it would be error for the court to tell the jury that it, without more and unexplained, would amount to proof of fraud. At most it would be a circumstance from which the jury would be at liberty to reach a different conclusion. The State courts do not sit to administer the bankrupt law. So far as Congress in the exercise of its unquestionable power to pass a general bankrupt law forbids, and, therefore, renders unlawful any particular act of any individual, it will be unlawful everywhere in the United States. But when in carrying into effect the provisions of such a system it prescribes a mode of procedure and artificial rules of evidence, the operation of these must be confined, (if not to the forums especially charged with the execution of the bankrupt law,) to cases in which the enforcement of that law is sought.