ORDWAY v. SMITH.

1. **Tax Sale**: LANDS OF INSANE PERSON: CONVEYANCE BY GUARDIAN. Where land owned by one who was insane, and which had been determined by the assessor not to be taxable, was sold by the guardian of such insane person under an order of the court, it was held that it did not become taxable in the hands of the purchaser until the conveyance by the guardian was executed and approved by the court, although by its terms such conveyance related back and took effect some two years prior to the date of its execution, and a sale of the land by the treasurer for the taxes of such two years was held to be unauthorized and void.

*Appeal from Monona District Court.*

TUESDAY, APRIL 27.

ACTION to recover real estate. Trial to the court, judgment for the defendant, and the plaintiff appeals.

*Joy & Wright* and *Monk & Sellick*, for appellant.

*G. W. McMillan* and *O. C. Tredway*, for appellee.

SEEVERS, J.—I. This cause was tried below as an equitable proceeding, and it will be regarded as triable anew in this court. The plaintiff's title consists of certain tax deeds made in pursuance of a sale for unpaid taxes of 1869 and 1870.

The real estate in controversy belonged to Levi Smith, at the time he became insane, in 1865. Seth Smith was appointed his guardian. In 1867 the guardian applied to the

proper court for leave to sell the real estate, and such an order was duly made. On the 17th day of August, 1870, the guardian conveyed the premises to the defendant Ellen Smith, and on the 22d day of said month he reported to the proper court that he had sold the same to the defendant Ellen Smith, on the 14th day of July, 1868, and the obligation and mortgage given by the defendant to secure the unpaid purchase money drew interest from the day last named, although they were in fact executed August 17, 1870.

The guardian's sale and conveyance was approved by the court on the 22d day of August, 1870. This is the defendant's title. If the real estate was subject to taxation for the years 1869 or 1870, it is insisted, the plaintiff is entitled to recover. The tax deed is only *prima facie* evidence of this fact. Revision, § 784.

Section 711 of the Revision specifies the property that is exempt from taxation, and among other exemptions are " The polls or estates, or both, of persons who by reason of age or infirmity may, in the judgment of the assessor, be unable to contribute to the public revenue; such opinion being subject to reversal by the board of supervisors."

In 1867 the real estate was entered on the assessor's book in the name of Levi Smith, and under the name the assessor wrote the words " not taxable—insane." The land was not taxed for that or the year 1868. This clearly indicates the assessor determined, as he lawfully might, that the land was not taxable. No assessment of the real estate was made by the assessor for 1869 or 1870, and we think, in the absence of any evidence to the contrary, the assessor for those years also determined the real estate was not subject to taxation. Besides this, there is evidence showing the assessor for 1869 so declared, and the assessor for 1870 determined the personal property of Levi Smith was not subject to taxation, because of his continued insanity. The determination of the assessor was not reversed by the board of supervisors, at least there is no evidence so showing. In 1870 or 1871 the treasurer

made an assessment of the real estate, in the name of Ellen Smith, on the books of 1869 and 1870, and it was under this assessment it was sold.

The treasurer made the assessment under the belief the real estate had been sold by the guardian of Levi Smith, to the defendant Ellen Smith, and that it was her property. If it did belong to her the act of the treasurer was probably legal, but not if it was the property of the insane person. If it was the property of the latter, the treasurer did not have the authority to reverse the determination of the assessor. This, under the statute, could only be done by the board of supervisors.

II. The material question, then, is, did the real estate belong to Ellen Smith on the 1st day of January, 1870. It is provided by statute that "Deeds may be made by a guardian in his own name, but they must be returned to the court, and the sale or mortgage be approved before the same are valid." Revision, § 2558. It is the sale, that must be approved, and this is not a mere formality. · *Wade v. Carpenter*, 4 Iowa, 361.

1. TAX sale: land of insane person: conveyance by guardian.

It is probably true that the sale and conveyance when approved by the court relate back so as to vest the title in the vendee from the time the sale was actually made. But inasmuch as no title passed until the confirmation, the question is whether the defendant owned a taxable title until that time. If the title was not in the defendant Ellen Smith, it must have been in the insane person, and when owned by him the real estate was not subject to taxation. But it may be said if the defendant was the owner of an equitable title the real estate was taxable. We incline to think, however, that such equitable title must have been enforceable. That is, such a title as Ellen Smith could have enforced by an action for specific performance. This she could not have done, as it was within the discretion of the court to confirm the sale or not. The "accepted bidder acquires by the mere acceptance of his bid no independent right * *; he is merely a pre-

ferred proposer until confirmation of the sale by the court as agreed to by its ministerial agent." Rorer on Judicial Sales, section 124, and authorities cited. "The matter of confirmation rests so peculiarly upon the wise discretion of the court, * * * that it is difficult to come to any absolute legal rule on the subject other than that of a sound legal discretion." Rorer on Judicial Sales, section 128. We regard it, therefore, as doubtful whether the defendant was the owner of a taxable title in 1869 or 1870, until after the confirmation.

But was there a sale to the defendant Ellen Smith, on the 14th day of July, 1868? The defendants, in their evidence, deny that there was. There is no writing signed by them which in terms so states; nor is there any evidence that they went into possession or paid a part of the purchase price under any contract of sale.

The defendants testify they went into possession in 1868; but deny there was then any agreement to purchase the premises. They state they leased or rented the same from the guardian, and the guardian's report shows they paid him money on the land in May, 1868. This could not have been a part of the purchase money, as it is not claimed there was a sale until July afterward. The money then paid must have been as rent, as the defendants claim. When the guardian, in August, 1870, made a report of the sale, he stated it was made on July 14, 1868. No explanation is given why, if then made, it was not earlier reported to the court and perfected by a conveyance and confirmation. Such report is not conclusive as to the defendants, and we think has been sufficiently explained by them; their evidence being that the guardian insisted they should pay interest on the purchase money from July 14, 1868, and have credit for the several amounts they have paid as rent. To this they agreed and gave their obligation, so specifying, for the purchase money. This is not unreasonable, and there is no evidence to the contrary except that several witnesses testify the defendants, or one of them, stated in 1869 they had purchased the real estate

of the guardian. This evidence is substantially denied by the defendants, but conceding it to be true, they were evidently mistaken as to the character of the contract. There may have been a parol agreement to that effect between them and the guardian, but it was not such a contract as vested in the defendants the legal or equitable title. The title remained all the time in Levi Smith, and the defendants were not vested with a taxable title until the conveyance was made and sale confirmed, in August, 1870.

The deed, signed by Seth Smith, administrator, we do not think was admissible in evidence for any purpose. There is no evidence of its delivery, nor was it sufficiently shown defendants ever had knowledge of its existence.

We are of the opinion the real estate in question belonged to Levi Smith up to the confirmation of the sale in August, 1870, and that it had been determined by the assessor it was not subject to taxation, and that the treasurer had no authority to assess the same to Ellen Smith or any other person; that the assessment made by him was void, and, therefore, it follows that the sale and conveyance made in pursuance thereof are also void.

AFFIRMED.