### REDEWILL v. GILLEN.

(*Supreme Court of New Mexico.* January 19, 1887.)

1. SALE—CONDITIONAL—DELIVERY—SUBSEQUENT PURCHASER WITHOUT NOTICE.
    Where plaintiff sells and delivers a piano, under an agreement by which the purchaser is to pay for it by installments, and until full payment the piano is to remain the property of the seller, and on default the possession thereof may be resumed by the seller on repayment of installments paid, less a monthly rent and an agreed sum as damages, and, the purchase money being unpaid, the purchaser sells the piano, with other goods, to defendant who claims to be a purchaser in good faith, plaintiff can replevy the piano from defendant, who obtains no right he can assert in respect to it.[1]

2. SAME—REPLEVIN—PURCHASER—PROOF OF BONA FIDES.
    Where, in an action of replevin against a purchaser, defendant bases his defense on a purchase in good faith and for value, he must prove that he had no knowledge of plaintiff's ownership.

Appeal from district court, Grant county.
Action of replevin. Judgment for plaintiff. Defendant appeals.
*Fielder & Fielder*, for appellant. *Murat Masterson*, for appellee.

BRINKER, J. This was an action of replevin for a piano. On the thirtieth day of November, 1883, plaintiff delivered to one Charles Morse the piano in question, and at the time of delivery the following agreement was executed:

"This is to certify that I, Charles Morse, have this day leased of A. Redewill a square Pease piano, style O, sq., number 30,158, manufactured by C. D. Pease & Co., valued at two hundred and fifty dollars, in gold coin, subject to the following conditions, to-wit:

"(1) Seventy-five dollars to be paid by me to A. Redewill, as rent therefor, on December 10, 1883, and twenty-five dollars to be paid on the tenth day of each month thereafter as such rent for seven months, with interest on regular deferred payments at the rate of one per cent. per month.

"(2) And, should I fail to make any of the above payments as specified, I hereby agree to surrender said piano to A. Redewill in as good condition as when received, customary wear by careful usage excepted; provided that, if I am not required to surrender said piano upon a failure to make any payment when due, I agree to pay to said A. Redewill two per cent. per month on such deferred payments until paid.

"(3) And I further agree that said piano shall not be removed from the premises No.———, Deming, New Mexico, now occupied by me, for any purpose or use whatsoever, (removal from danger of fire excepted,) without the consent of A. Redewill.

"(4) It is expressly understood and agreed that until all of said sum of two hundred and fifty dollars, with interest thereon as aforesaid, is paid, the said piano is to remain the property of the said A. Redewill, and I have no power or right to dispose of the same; but when all of said sum of $250, with interest thereon as aforesaid, is paid, then the title of the said piano is to in-

[1] See note at end of case.

vest in me, and the said A. Redewill is to give me a bill of sale of the same.

"(5) It is also agreed that, in the event that I shall fail to make either of said monthly installments at maturity, the said A. Redewill may at his option take possession of the said piano, and cancel this contract on refunding the money already paid by me, after deducting therefrom $10 per month rent, and expenses of removal, and the sum of $50 as liquidated and assessed damages, which I hereby promise and agree to pay said A. Redewill in the event that I shall fail to perform the terms of this contract.

"In witness whereof I have hereunto set my hand, in Deming, New Mexico, this thirtieth day of November, 1883.            A. REDEWILL,
"CHARLES MORSE."

The piano remained in the possession of Morse, under this agreement, until the fourth day of March, 1884, when Morse sold it, with all his other household goods, including saloon fixtures, etc., and a house situate upon leased lots in Deming, to the defendant. In April of that year the plaintiff, who appears to have been a resident of the state of California, came to Deming, and demanded the piano of defendant, who refused to deliver it to him.

On the trial plaintiff, on his direct examination, testified that he had "leased or sold" the piano to Morse. On cross-examination he reiterated this statement, and said that Morse had never paid him a cent on it, and that it was worth $250. Defendant testified that he bought and paid for the piano, together with the house and all the personal property, in a lump, of Morse, in good faith, for the sum of $1,150; that nothing was said about the price of any particular article; and that, before he purchased, he had the county records examined for incumbrances on the property and found none. The property which defendant purchased from Morse consisted of a house of three rooms, one billiard table, one set of balls and cues, and one set of pool-balls, a lot of whisky, case goods, fancy liquors and champagne, the piano in question, an iron safe, two sets of pins and balls for use in a bowling alley, three stoves, all the kitchen and bed-room furniture, including beds and bedding, one sewing-machine, and $150 worth of millinery goods.

Idus L. Fielder, one of the defendant's attorneys, testified that the house would sell for $500 or $600. The sale from Morse to defendant was concluded in the afternoon of March 4th, and Morse left Deming that night, and his whereabouts have ever since been unknown.

The court instructed the jury, in substance, that the agreement set out above was a lease, and that no title to the piano passed under it to Morse, and that, therefore, Morse could convey none to defendant. Defendant duly excepted to this instruction, and insisted upon this exception in his motion for a new trial. The court overruled his motion for a new trial, and to this ruling defendant also excepted.

The defendant does not say, nor was there any testimony to show, that he had no knowledge of the contract under which Morse held the piano. He contents himself with saying that he bought the piano in *good faith*, and that there was no incumbrance upon it of record. The term "good faith" has a well-defined meaning; and when used to qualify a purchaser, means one who buys honestly for a valuable consideration, *and without notice.* 1 Burrill, Law Dict. 213; Wade, Notice, § 67, and cases cited. In a more restricted sense, it may mean that the purchaser took the property, and paid for it, intending that the title should pass to him without any interest being reserved to his vendor. In this case, the defendant, having contented himself with merely examining the records for the purpose of finding incumbrances, and saying nothing about what information he may have received from other sources, we are inclined to think that in his testimony he used the term in its restricted sense; especially so when we remember that he bought the goods in mass for $1,150, without naming the price of a single article,—the purchase embracing a house worth $500 or $600, a piano worth $250, millinery goods

worth $150, a billiard table, three stoves, household and kitchen furniture, and a number of other articles. *Copland* v. *Bosquet*, 4 Wash. C. C. 589.

We do not hold that it was necessary for defendant to have made inquiry as to how Morse held the piano, unless there were circumstances casting suspicion upon his title. *State* v. *Merritt*, 70 Mo. 275; *contra, Coggill* v. *Railroad Co.*, 3 Gray, 550. Upon this we express no opinion; but we do hold that, if the defendant had no knowledge or information on the subject, he should have proved it. *Copland* v. *Bosquet, supra.* Want of knowledge will not be presumed, in the absence of proof, when defendant relies upon a purchase in good faith and for value.

Defendant insists that the court erred in instructing the jury that the agreement was a lease, and that defendant obtained no title by his purchase. In support of his contention he cites us to the following adjudged cases and text-books: 5 N. W. Rep. 758;[1] 7 N. W. Rep. 67;[2] 3 N. W. Rep. 713;[3] *Vaughn* v. *Hopson*, 10 Bush, 337; *Wait* v. *Green*, 36 N. Y. 556; *Fosdick* v. *Schall*, 99 U. S. 235; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Heryford* v. *Davis*, 102 U. S. 235; Williams, Pers. Prop. 98; Wait, Act. & Def. 538–636; Benj. Sales, (4th Amer. Ed.) § 457.

The cases in the Northwestern Reporter we have been unable to examine, because the books are not accessible. We were unable to find them in any other publication, because counsel have adopted the inexcusable practice of referring in their brief merely to the volume and page, without giving the names of the parties.

*Fosdick* v. *Schall, supra,* is not in point. That was a contest between the lessor of railroad cars and a mortgagee of the railroad, with all of its property, rights, and franchises. The mortgage was executed by the railroad long before the cars were delivered. The mortgagee sought to hold the cars as after-acquired property, inuring to his benefit. The court held that this could not be done; that while it was true that the mortgage would attach to the cars as after-acquired property, still it would only attach to the interest of the railroad company, and if any one held a title superior to that of the railroad, the mortgagee would take subject to such superior title; and, if such title was asserted, it must prevail.

In *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664, an engine was delivered to Conant & Co. under a written lease very much like the one now under consideration, in which it was provided that a cash payment should be made upon the engine, and certain other payments, amounting in all to the value of the engine, should be paid monthly as rent; that, upon the payment of the last installment of such rent, the engine would be sold and transferred to Conant & Co., but until that time it should remain the property of the lessor, without any right or authority on the part of Conant & Co. to sell, incumber, or otherwise dispose of it; that, if default should be made in the payment of any installment, Conant & Co. should redeliver the engine to the lessor in 30 days, or permit it to come upon the railroad where the engine was, and take it away. The engine was attached in a suit against Conant & Co., and sold to Hervey, who had no notice of the lessor's claim. In replevin by the locomotive works against Hervey for the possession of the engine, it was held that, under the laws of Illinois, a recovery could not be had, citing

---

[1] Ordway v. Smith, 5 N. W. Rep. 757. The purchaser at a guardian's sale does not acquire a taxable title until the deed is given, and the sale confirmed.

[2] Beurmann v. Van Buren, 7 N. W. Rep. 67. One who buys goods with the sole intent of getting payment for an honest debt is not affected by the fact that the seller may intend to defraud his creditors if he does not share such intention, and the burden of proof as to such intent and participation is upon the party attacking the sale.

[3] Pash v. Weston, 3 N. W. Rep. 713, holding that an *ex parte* instrument purporting to be a bill of sale, and which provided that title to the chattel in dispute should remain in vendor until paid for, and which was dated, executed, and filed nearly two months after the sale had taken effect, did not give constructive notice to a subsequent purchaser.

*McCormick* v. *Hadden,* 37 Ill. 370; *Ketchum* v. *Watson,* 24 Ill. 591; *Murch* v. *Wright,* 46 Ill. 488.

If the Illinois cases were binding authority, there could be no doubt of the soundness of defendant's position. The case of *Murch* v. *Wright* is very similar to this, and it appears to be in harmony with the well-settled rule in that state. Judge BREESE, in *Brundage* v. *Camp,* 21 Ill. 330, in a very able and exhaustive opinion, reviewing a long list of authorities, concludes that, in all cases where the owner has put it in the power of one person to impose upon others by being the apparent owner of personal property, the transaction will be held a sale passing title if the apparent owner afterwards sells to a *bona fide* purchaser. And in *Murch* v. *Wright, supra,* it is held that in such case the fact that the instrument by which the property passes to the first vendee is called a lease will not change the character of the transaction.

The case of *Heryford* v. *Davis, supra,* arose upon the construction of an instrument called a lease, as affected by the Missouri mortgage act. The contract recites that A., a manufacturer of cars, agreed to loan to the Keokuk & Kansas City Railway, for hire, certain cars, to be used on the railroad of the second party, for four months; that A. acknowledged the receipt of three notes and thirteen bonds of the railway company as collaterals for the notes; and that A. should hold said notes, and collect them at maturity, and hold the proceeds for the safe custody and return of the cars when demanded,—the railway company to have the right to purchase the cars upon the payment of a sum equal to the aggregate of the notes given for the rent and interest, but until such payment the railway company had no right, title, or interest in the cars, but they should remain the property of A.; that if default should be made in any of the payments, A. should retain all payments made, and sell the cars at public sale, and after paying himself the full price of the cars, and interest, the surplus should go to the railway company. These cars, while in possession of that railway company, were levied upon by one of the creditors of that company as its property. Under the statute, A. made demand of the sheriff for the cars, claiming them by virtue of the above contract. The sheriff notified the creditor of this claim, and the creditor gave him an indemnifying bond, and ordered him to proceed to a sale of the property, which was done. A. afterwards brought suit upon this indemnifying bond for damages. The court held that, while the contract was called a lease, and the cars stated to be loaned for hire, it was in fact a sale and a mortgage back; that no matter what language was used, or by what name the parties christened the contract, it should be construed according to the intention of the parties, gathered from its terms; that, although the word "hire" was industriously used, it was manifest no hiring was intended. No price for the hire was mentioned. In every bailment or letting for hire a price or compensation for hire was essential. This may be a reasonable compensation. No such compensation was provided or contemplated. The railway company was not given an option to buy or not. It was compelled to pay the notes, or the property would be sold for that purpose. The court say: "This was in no sense a conditional sale, but the giving of property as a security for the payment of a debt, and was the very essence of a mortgage, and, because not recorded, void, under the chattel mortgage act of Missouri."

The difference between that case and this is very manifest. Here, compensation for the hire is fixed; exorbitant it may be, but compensation, nevertheless; and here, also, there is provision made for the return of the property to the owner, and the refunding to Morse of whatever he may have paid in excess of such compensation, and $50 agreed upon as damages. No provision is made for a sale in the event of default by Morse in making payments, but the vendor is to resume possession of his property, with the rent and damages

agreed upon, and then the contract was to be canceled, and the parties to be towards each other as if they had never contracted. No relation of creditor and debtor existed, and therefore the agreement could not be held a chattel mortgage within the provision of our statute. Section 1587, Comp. Laws, 1884.

The case of *Vaughn* v. *Hopson, supra*, was a conditional sale of a mule, for which a note was given with security. To the note was attached this memorandum: "This note is given for a mule, and the mule is bound, or the title remains in Hopson until he gets his money," and was signed by Hull, the maker of the note. Hull sold the mule to Ricketts, and Ricketts sold it to Vaughn. After an unsuccessful attempt to collect the note by suit, Hopson brought replevin against Vaughn for the mule. The case was very carefully considered, and a number of authorities examined. The conclusion was that the facts disclosed a conditional sale, with an unconditional delivery, and therefore the property passed to Hull, and from him to the last vendee, whose title was good against the original vendor.

In *Wait* v. *Green, supra*, the following facts appear: Catharine Comins sold and delivered a horse to Billington, and took his note for $100, due in five months. Under the note, on the same paper, was the following, signed by Billington: "Given for one bay horse. The said Mrs. Comins holds the said horse as her property until the above note is paid." Mrs. Comins transferred the note and memorandum to Wait. Billington sold the horse to Green, for a full consideration, and without notice of the condition upon which the original sale was made. Wait demanded the horse of Green, who refused to comply with the demand. Thereupon Wait brought suit for damages for the detention. The court held that, although the sale and delivery were conditional, Green being a *bona fide* purchaser from Billington, he would be protected in his title; citing 2 Kent, Comm. 498; *Haggerty* v. *Palmer*, 6 Johns. Ch. 438; *Buck* v. *Grimshaw*, 1 Edw. Ch. 146; *Caldwell* v. *Bartlett*, 3 Duer, 352; *Covill* v. *Hill*, 4 Denio, 323; *Beavers* v. *Lane*, 6 Duer, 238; *Fleeman* v. *McKean*, 25 Barb. 474; *Keeler* v. *Freeman*, 1 Paige, 312; *Western Transp. Co.* v. *Marshall*, 37 Barb. 509; *Smith* v. *Lynes*, 5 N. Y. 41; *Crocker* v. *Crocker*, 31 N. Y. 507.

These Illinois, Kentucky, and New York cases proceed upon the principle that, when one of two innocent persons must suffer by the fraud of a third, the one who puts it in the power of such third person to do the wrong should bear the injury. This position seems almost impregnable, and appeals strongly to our sense of justice, and we should hold with them, and thus uproot in this jurisdiction what we consider a pernicious system of secret titles concealed in the pockets of the owner, and calculated to entrap the unwary, were we not impelled by an overwhelming weight of authority to the contrary.

Before proceeding to the examination of the authorities holding the opposite view, it may be proper here to remark that the case of *Wait* v. *Green, supra*, has been overruled, and the cases cited and relied upon in that case carefully examined and distinguished in the later case of *Ballard* v. *Burgett*, 40 N. Y. 314.

The principle opposed to the rule held in the states mentioned, is an old one in the common law, and has been recognized from a very early period.

In Shep. Touch. it is said: "It is a general rule that, when a man hath a thing, he may condition with it as he will. A contract or sale of a chattel personal, as an ox or the like, may be upon condition, and the condition doth always attend and wait upon the estate or thing whereunto it is annexed; so that, although the same do pass through the hands of a hundred men, yet it is subject to the condition still." Touch. 118.

In *Coggill* v. *Railroad Co.*, 3 Gray, 545, A. sold and delivered to B. certain wool, which was to be paid for by note at six months. B. sold the wool to

C., and delivered it to the railroad, for shipment to C., whereupon A. took it from the railroad by writ of replevin. The note was never given, and B. failed and stopped business. The railroad company defended on the ground that it was the bailee of a purchaser for value from the original vendee, to whom A. had given the possession and all *indicia* of ownership. BIGELOW, J., after stating that it had long been settled in that state that a sale and delivery of goods on condition that the title should not vest until the price was paid or secured did not pass the title to the property until the condition was performed, and if the condition should not be fulfilled the vendor might recover it from the vendee or his creditors, says: "The delivery which in ordinary cases passes the title to the vendee must take effect according to the agreement of the parties, and can operate to vest the property only when the contingency contemplated by the contract arises. The vendee, therefore, in such cases, having no title to the property, can pass none to others. He has only a bare right of possession; and those who claim under him, either as creditors or purchasers, can acquire no higher or better title. Such is the necessary result of carrying into effect the intention of the parties to a conditional sale and delivery. Any other rule would be equivalent to denying the validity of such contracts. But they certainly violate no rule of law, nor are they contrary to sound policy."

In a note to this case, there is a statement by the reporter that, in an action of replevin for a piano delivered under a contract very much like the one made by plaintiff and Morse, and which piano the vendee sold before payment, at Suffolk, March term, 1856, judgment was given for the vendor.

The first case seems to have settled the doctrine in Massachusetts. *Sargent* v. *Metcalf*, 5 Gray, 305; *Blanchard* v. *Child*, 7 Gray, 155; *Benner* v. *Puffer*, 114 Mass. 376. The same rule prevails in New Hampshire. *Porter* v. *Pettengill*, 12 N. H. 299; *Luey* v. *Bundy*, 9 N. H. 298; *Davis* v. *Emery*, 11 N. H. 230; *Holt* v. *Holt*, 58 N. H. 276. And in Maine. *Sawyer* v. *Fisher*, 32 Me. 28; *Everett* v. *Hall*, 67 Me. 497.

The case of *Ballard* v. *Burgett*, *supra*, was one in which it appeared that Ballard sold to France a yoke of oxen, with the agreement that the oxen were to remain the property of Ballard until they were paid for. This was in October, 1865. The oxen were delivered to France, who kept them, without paying for them, until April, 1866, when he sold them to Burgett, who bought without any notice whatever of Ballard's claim. Ballard sought to recover the oxen from Burgett. GROVER, J., in delivering judgment, said: "But it is claimed that France, although he had no title himself, but only the right to acquire title by paying the money, nevertheless, by selling to a *bona fide* purchaser, such purchaser acquired from him a valid title against the plaintiff. If this be so, this class of cases constitutes an exception to the general rule that a purchaser of personal property other than commercial paper acquires no better title than that of his vendor. I can conceive no substantial principle upon which such an exception can be sustained. The possession of the contemplated purchaser gives him no better opportunity to impose upon purchasers than that of an ordinary bailee. In the latter case it has never been claimed that any title would be acquired by a purchaser from such bailee. Possession by a vendor, without title, has never been held sufficient to confer a title upon a purchaser from him." The learned judge then discusses the case of *Wait* v. *Green*, and the authorities cited by Judge BOCKES in his opinion, and concludes that the rule announced in that case is not sustained, and declines to follow it. Judge LOTT concurred in a separate opinion, critically examining the *Wait Case*, and the cases cited in it. JAMES and MURRY, JJ., dissented. The same doctrine is recognized in *Bean* v. *Edge*, 84 N. Y. 510; *Cole* v. *Mann*, 62 N. Y. 1.

A very interesting case is found in 28 Ohio St. 630,[1] the facts in which are more nearly like the facts here than any case which has fallen under our no-

[1] Sanders v. Keber.

tice.   There an instrument in writing was executed, reciting that K. & M. had given into the custody of P. a mirror and three pictures, which P. agreed to hold as the exclusive property of K. & M. until he (P.) should have paid them the sum of $135 in weekly installments; that, upon P.'s failing to perform any of the conditions for two weeks, he should deliver to K. & M. the mirror and pictures in as good condition as when received, and forfeit all money paid thereon as an equivalent for the use of the same while in his custody.   K. & M. agreed in the same paper that, upon the performance of all the conditions as to payments, etc., they would transfer the property and its title to P.   P. then took the property, and used it as a part of his household furniture.   He paid $40 of the amount due, $5 of which was from the earnings of his wife's labor.   P. abandoned his family, and left them entirely destitute.   One month after P. left, his wife sold the mirror to obtain sustenance for her family.   Defendant bought the mirror, paying full value for it, and at the time had no knowledge of the arrangement under which P. held it. K. & M. commenced their action against the defendant to recover this mirror. The questions arising upon this state of facts, affecting conditional sales of chattels, were elaborately considered by the court, and all the American cases examined and discussed, among them the cases from Illinois and Kentucky, and the conclusion reached is in harmony with the views held in Massachusetts and elsewhere, and which are so quaintly and tersely stated by Shepherd.

Since the above was written, we have been handed a decision by the supreme court of the United States, (*Harkness* v. *Russell*, 7 Sup. Ct. Rep. 51,) appealed from Utah.   Justice BRADLEY, in a lengthy opinion, collates all the authorities, English and American, touching conditional sales, and agrees that in such transactions the vendor may pursue his property even into the hands of an innocent purchaser for value and without notice.   This point was not necessary to the decision of that case, because it was shown that the purchaser had notice of the vendor's claim, but the court considered it, and the discussion of it in that case, and the conclusion reached, throws into the scale of the majority the weight of the opinion of that august court.

It is believed that an examination of the reports of adjudged cases will show that in almost every state in the Union, except those quoted in the first part of this opinion, the principles here adopted have been recognized as the law of the land.   In many states, however, the hardships that have resulted from the enforcement of this rule in favor of designing and wicked persons having been seen, laws have been passed invalidating all such contracts, and we venture to hope that the legislature will adopt some such salutary law here.

While the court below may not have been strictly accurate in saying to the jury that the contract was a lease,—it should have called it a conditional sale,— yet this inaccuracy could not have affected the result; for, whether it be considered a lease or contract of conditional sale, the defendant had no rights which he could assert against it.

Finding no error in the action of the court, the judgment should be affirmed; and it is so ordered.

LONG, C. J., and HENDERSON, J., concur.

NOTE.

A CONDITIONAL SALE reserving the title to the property in the seller until the payment of the purchase price, or the performance of some other condition, is valid, not only between the parties, but also as against third persons, Harkness v. Russell & Co., 7 Sup. Ct. Rep. 51; *Arkansas*, McIntosh v. Hill, 1 S. W. Rep. 680; Blackwell v. Walker, 5 Fed. Rep. 419; *Connecticut*, Cooley v. Gillan, 6 Atl. Rep. 180; *Florida*, Campbell Printing-press & Manuf'g Co. v. Walker, 1 South. Rep. 59; *Indiana*, Baals v. Stewart, 9 N. E. Rep. 403; *Iowa*, Thorpe v. Fowler, 11 N. W. Rep. 3; Warner v. Jameson, 2 N. W. Rep. 951; *Kentucky*, Hart v. Barney & Smith Manuf'g Co., 7 Fed. Rep. 543; *Michigan*, Marquette Manuf'g Co. v. Jeffery, 13 N. W. Rep. 592; Smith v. Lozo, 3 N. W.

Rep. 227; *Montana,* Silver Bow M. & M. Co. v. Lowry, 12 Pac. Rep. 652; Heinbockel v. Zugbaum, 5 Pac. Rep. 897; *New Jersey,* Marvin Safe Co. v. Norton, 7 Atl. Rep. 418; The Marina, 19 Fed. Rep. 760; *Vermont,* Dixon v. Blondin, 5 Atl. Rep. 514.

Such sales do not come within the provisions of the laws for registration of chattel mortgages in *Arkansas,* Blackwell v. Walker, 5 Fed. Rep. 419; *Florida,* Campbell Print-ing-press & Manuf'g Co. v. Walker, 1 South. Rep. 59; *Montana,* Heinbockel v. Zug-baum, 5 Pac. Rep. 897; but they do in *Iowa,* Warner v. Johnson, 21 N. W. Rep. 483; Warner v. Jameson, 2 N. W. Rep. 951; *Kentucky,* Hart v. Barney & Smith Manuf'g Co., 7 Fed. Rep. 543; *Iowa,* Budlong v. Cottrell, 20 N. W. Rep. 167; *Minnesota,* Dyer v. Thor-stad, 29 N. W. Rep. 345; *Pennsylvania,* Rafferty v. McKennan, 1 Atl. Rep. 546. And see Marvin Safe Co. v. Norton, (N. J.) 7 Atl. Rep. 418.

In Mississippi such sales are valid, without writing or record, unless the separation of title and possession continues three years, and except that property so sold to a *trader* is liable to his creditors, unless a sign be displayed showing its true ownership. Paine v. Hall's Safe & Lock Co., (Miss.) 1 South. Rep. 56.

When the seller reserves the title in himself till the price is paid, an innocent buyer from the purchaser gets no title. Simpson v. Shackelford, (Ark.) 4 S. W. Rep. 165; McRae v. Merrifield, (Ark.) 2 S. W. Rep. 780; De Saint Germain v. Wind, (Wash. T.) 13 Pac. Rep. 753; Albright v. Brown, (Neb.) 36 N. W. Rep. 297; Pate v. Oliver, (N. C.) 10 S. E. Rep. 709. Nor does the mortgagee of such purchaser. Hood v. Olin, (Mich.) 36 N. W. Rep. 177; Shoshonetz v. Campbell, (Utah,) 24 Pac. Rep. 672. Nor do his attach-ing or execution creditors. Peabody v. Maguire, (Me.) 12 Atl. Rep. 630; Dodd v. Bowles, (Wash. T.) 19 Pac. Rep. 156; Mack v. Story, (Conn.) 18 Atl. Rep. 707; Brewing Co. v. Merritt, (Mich.) 46 N. W. Rep. 379. Nor does his assignee. Schneider v. Lee, (Or.) 17 Pac. Rep. 269. In some of the jurisdictions in which the foregoing cases have been decided, the statutes regulate conditional sales, requiring the contract to be in writing and recorded, but the principle is the same in all cases,—that is, the condition reserving title is valid,—but some states require higher evidence of the contract than others, when there is a contest between the seller and third persons. But when the purpose of the sale is that the goods may be resold by the purchaser, a reservation of title in the seller is void. Manufacturing Co. v. Carman, (Ind.) 9 N. E. Rep. 707; Bar-ing v. Galpin, (Conn.) 18 Atl. Rep. 266. And so, though the written contract reserves title in the seller, it is competent for the buyer from the purchaser, to show that this contract was customarily abrogated by the parol agreement of the seller, who permit-ted the purchaser to resell. Spooner v. Cummings, (Mass.) 23 N. E. Rep. 839. When the property sold is exchanged by the purchaser for other property, the seller has no claim on the exchanged property. Deadman v. Earle, (Ark.) 12 S. W. Rep. 330. But where the seller consents to such exchange, his title to the exchanged property is good, even against a *bona fide* purchaser. Perry v. Young, (N. C.) 11 S. E. Rep. 511. In *Pennsylvania,* the rule is that a reservation of title by the seller is void as to the purchaser's creditors. Peek v. Heim, 17 Atl. Rep. 984. But where the contract is a lease, and not a conditional sale, the title does not pass to the purchaser, and the prop-erty cannot be reached by his creditors. Manufacturing Co. v. Heil, 8 Atl. Rep. 616; Wertz v. Collender Co., 9 Atl. Rep. 331. If the contract reserving title in the seller is valid where made, it will be enforced in another jurisdiction, where it is invalid for want of registration. Mershon v. Wheeler, (Wis.) 45 N. W. Rep. 95.