JUDGE PRYOR
delivered the opinion oe the court.
William Hull purchased of the appellee, John Hopson; a mule at the price of one hundred and seventy-five dollars, executing his note., with William B. Bevil his surety, for the sum agreed on as follows:
“ Twelve months after date, for value received, we or either of us promise to pay John Hopson, or order, one hundred and seventy-five dollars. This May 6, 1869.
William Hull,
William B. Bevil,”
To which note is annexed the following stipulation:
“ This note is given for a mule, and the mule is bound or the title of the mule remains in Hopson until .'he gets his money. .
“ May-' 6, 1869. William Hull.”
At the time of the execution of this writing the mule was delivered to Hull, who afterward sold and delivered it to Ricketts, and Ricketts to Vaughn, both of the last-named parties paying at the time of their respective purchases its full value.
Hull, the purchaser from Hopson, failing to pay his note at maturity, the latter instituted his action against him and his surety, obtaining a judgment thereon, upon which an execution issued, and was returned by the proper officer “ no property found.” Hopson then instituted the present action against Robert Vaughn, the last vendee of the mule, to recover the possession, insisting that by the terms of the sale to Hull he was never divested of title.
Vaughn answered, relying on his purchase from Ricketts, making this pleading a cross-action against the latter, and asking for judgment against him in the event of a recovery by Hopson. Both Vaughn and Ricketts allege and prove *339 that they were bona fide purchasers of the property without any notice whatever of the asserted claim of Hopson upon it.
The law and facts Avere submitted to the court, and a judgment rendered in favor of the appellee Hopson against Vaughn for the recovery of the mule or its value, one hundred and fifty dollars, and a judgment in favor of Vaughn in his cross-action against Ricketts for a like amount, it being the sum paid by Vaughn to Ricketts at the time of his purchase. From this judgment both Ricketts and Vaughn have appealed.
It is insisted by counsel for the appellants that the institution of the action by the appellee on the note executed by Hull, the original vendee, was an election on the part of Hopson to look to the ordinary process of law for making his debt, and a Avaiver of his right to recover or subject the specific property to its payment.
If the title by the terms of the contract was to continue in the vendor until the purchase-price was paid, we are unable to perceive why the effort to coerce payment should divest him of title, unless there Avas some such laches shown in the prosecution-of the action as might affect the rights of creditors or purchasers. In Hilliard on the Law of Sales of Personal Property (page 23) it is said that where the title is not to vest until the price is paid “ the right of the vendor will not be affected by his recovering judgment against the vendee in an action for the-price, the judgment remaining unsatisfied.”
The essential question to be determined in the case is, can one purchasing bona fide of the first vendee for value, and without notice of the lien or reservation of title in the vendor, hold the property against the latter ?.
. In the case of Patton v. McCane (reported in 15 B. Mon. 556), a case almost identical with the one under consideration, it was adjudged that the payment of the money under such a contract is a condition precedent, and must be complied with *340 before the title passes; and for this reason, and no other, the original vendor was held entitled to recover the property in the hands of a remote vendee, and the want of notice on the part of the latter as to the conditions of the contract constituted no valid defense to the action.
Authority is not wanting maintaining the principle recognized by the opinion referred to; but the great weight of authority, as well as the reasoning applicable to the question presented, establishes the contrary doctrine as the correct rule on the subject.
The right of recovery on the part of the original owner is attempted to be sustained on the idea that one can not be divested of his property without his consent, and that the vendee’s possession in such a case is derived under a contract for sale and not of sale. In other words, that the one in possession has no title, but the mere right to possess, being the bailee only of the vendor. (Rawles v. Deshler, 28 Howard’s Practice Reports, p. 72.)
If the party in possession under such a contract is to be considered as a bailee of the property without any other right, it must be conceded that he can make no such disposition of it without the vendor’s consent as would divest the latter of title, and in making a sale could pass no greater right than the bailee himself had. But can it be maintained that under such a contract the original owner has only intrusted the possession of his property to the vendee to- hold or keep as his agent or bailee ?
The appellee in this case made a conditional sale of the mule to Hull with an unconditional delivery of the possession, and this possession the vendee continued to hold until the animal was sold by him to the appellants for a full- and fair consideration and without any notice on their part of appellee’s claim. The relation of vendor and vendee existed between the appellee and Hull, the one parting with *341 his property, and the other receiving the possession, not to hold as bailee, but as a purchaser; and although as between the original owner (the appellee) and his vendee the former could recover the property upon the failure to pay, as the latter would be estopped to deny the stipulations of his own contract, still as between the appellee and a bona fide purchaser from his vendee without notice of the conditions annexed to the sale the title passes.
Hilliard on Sales of Personal Property (page 114) says, “With regard to a bona fide purchaser of the goods from the original vendee the prevailing doctrine has been that, the goods could not be reclaimed from him by the original seller.”
Chancellor Kent, in discussing this question, concludes “ that the vendor’s right to the goods will be good as against the buyer from him and his voluntary assignee, though not as against a bona fide purchaser from the vendee.” (2 Kent, 497). In the case of Smith v. Lynes (Selden R. 46) it is said, “Every absolute delivery of goods sold on condition is presumptive evidence of a waiver of the condition by the vendor, and of an intention on his part to rely wholly on the personal security of the vendee for the payment of the price of the goods; that after actual delivery (although as between the parties to the sale such delivery may be conditional) a bona fide purchasér from the vendee gets a perfect title.” In the case of Fleeman v. McKeen (25 Barbour) the learned judge in treating of this question says, “My impression at the time was, and still is, that as the original owner voluntarily placed the goods in the hands of the purchaser, and thus made him the ostensible proprietor, a sale by the possessor to a bona fide dealer without notice would be valid and pass the title.” (Haggerty v. Palmer, 6 Johnson’s Chancery Reports, 437). In the case of Caldwell v. Bartlett (3 Duer, 352) it is said, “ It seems that in case of a sale and *342 delivery, even when the delivery is conditional, a bona fide purchaser from the person to' whom the delivery was made will acquire a valid title.” Again, “if the sale was conditional, but the goods were delivered unconditionally, the title vested in Reed oh the delivery, so that he could clearly confer title on a purchaser in good faith.” In the case of Wair v. Green (9 Tiffany, 556) Cornius sold and delivered a horse to Billington for one hundred dollars, and took his note, payable in five months, with the stipulation annexed, “that Mrs. Cornius holds the horse as her property until the above note is paid." The assignee of Cornius instituted an action against the vendee of Billington for the recovery of the horse. The court held “that the defendant was a bona fide purchaser from Billington, and the authorities are full that the defendant will be protected in his title.”
Numerous authorities might be cited sustaining what we conceive to be the true doctrine on this subject, holding that where there is a conditional -sale of chattels, with an actual delivery of possession to the vendee, a purchaser from the latter in good faith and without notice of the condition-acquires a perfect title; nor does this rule when adopted apply, as is maintained it must by those holding a different view of tire question, to a mere offer to sell. One may agree to sell to another, if he likes, his horse or his chattel after trial, and may deliver the possession for that purpose, and still no title will pass, even as against an- innocent purchaser, as no contract of sale absolute or conditional has ever been made, or in cases where goods are to be paid for oh delivery, and the purchaser without making payment and without the knowledge of the vendor takes the possession, in such a case the taking is tortious, and confers no title upon the vendee or the party- purchasing from him.
It -has been held, however, that where one purchases personal property and obtains the possession by reason of *343 fraudulent representations, and then sells to an innocent purchaser, the title vests in the latter, although as between the vendor and vendee the former can reclaim his property. (Mowry v. Walsh, 8 Cowen, 238.)
In order to create a lien for the purchase-price of chattels as against a purchaser for a valuable consideration without notice, there must be a conveyance or mortgage to that effect, acknowledged and lodged for record as prescribed by the statute. In this case the only evidence of the vendor’s lien is to be found in' his own pocket; and after placing the property in the possession of his vendee, and making him at least the ostensible owner, he should not be allowed to make others trust this vendee when not willing to do so himseif. The existence of a legal rule by which these hidden liens are made to affect the rights of innocent parties is certainly not required by the interest of trade and commerce, or in consonance with the common-law doctrine' as to the sale and transfer of* personal property. The innocent purchaser, as in this case, with the recognition of such a principle,' is placed at the mercy of the original owner, when the latter by his own act has invited him to make the purchase, and thus the title to such property not only made uncertain and insecure, but the frauds of those encouraged who are willing to impose upon the honest and confiding purchaser.
The principle announced in the case of Patton v. McCane (15 B. Mon. 555) is overruled as far as it conflicts with the views herein expressed, and the judgment herein is reversed, and cause remanded with directions to award the appellants a new trial and for further proceedings consistent with this opinion.