JUDGE CO FEB
delivered the opinion or the court.
January, 1876, the appellees brought this suit in the Kenton Circuit Court against the appellant for the recovery of one , Behring & Klix piano, No. 4,617, alleging that they were the owners thereof, and that it was in'the possession of the appellant, who unlawfully and without right detained it from their possession.
The appellant admitted the piano was in his possession, but denied that the appellees were the owners, or entitled to the possession.
On the trial the appellees, to prove title in themselves, read to the jury the following contract, proved to have been entered into by them with Mrs. Belle Martin at its date:
“ Cincinnati, 0., October 20, 1872.
“This agreement witnesseth, that J. Church & Co., party of the first part, have this day rented to Mrs. Belle Martin, party of the second part, residing at No. 207 West Fifth Street, Covington, Ky., one Behring & Klix piano, No. *432 4,617, valued at $550, to be used only by said party of the second part, her family and friends, in her residence, and not to be removed therefrom without the written consent of said J. Church & Co. indorsed hereon.
“ The party of the second part agrees to pay for the rent of said instrument $400 for the first month (represented by a lot in Covington deeded to J. C. & Co. by Mrs. Martin) and $10 per month for six months thereafter, then $20 per month, payable in advance on the 28th day of each month, beginning at date, at the store of said J. Church & Co., Cincinnati, Ohio, without any demand whatever to be made therefor.
“ The said renting may be terminated at any time by said J. Church & Co. at their option by the failure of said party of the second part to pay said specified rent when the same shall become due, or by the use of' said instrument in any manner other than that provided for above, or by the removal of said instrument from the place above described, or by abuse of the same, or by any other circumstances that may give said J. Church & Co. reason to fear for the safety of said instrument.
“The said party of the second part agrees to take good care of said instrument, beep the same in good order, and to return the same to said J. Church. <fc Co. whenever said renting may be terminated, whether at the expiration of eleven months, or by failure to comply with the terms above mentioned.
“ If the said party of the second part desires to become a purchaser of said instrument, she may do so at any time during the continuance of said renting, by the payment of $550, in which ca'se all sums paid for rent within eleven months (should said renting so long continue) will be deducted from said sum, but this privilege to purchase said instrument shall in no way interfere with the right of said J. Church & Co. to control said instrument (all property remaining in them) until said purchase-money is paid. J. Church & Co.
Belle Martin.”
*433 The appellant offered evidence to prove that he purchased the piano of Mrs. Martin about three or four months before this suit was brought, and paid therefor a valuable and full consideration, and immediately took it into his possession; that Mrs. Martin paid $400 at the time of entering into the contract, and a further sum of $10 at a later period; that she had possession of the instrument from the date of the contract with the appellees to the time when she sold it to appellant ; that she had moved it from one house to another on several occasions, and all the while exei’cised acts of ownership over it. He offered to prove how much he paid for it, but his offer was refused.
The appellant asked the court to instruct the jury that if the piano was delivered into the possession of Mrs. Martin, under the agreement between her and the plaintiffs at the date of that agreement, and remained in her possession from that time until she sold and delivered it to the defendant, and that she sold it to him for a valuable consideration, and he was ignorant at the time of the claim of the plaintiffs, they should find for the defendant.
The court refused so to instruct, and on motion of the appellees, instructed in substance that if the piano in contest was the same mentioned iix the contract read to them in evidence, and the rent paid by Mrs. Max’tin did not amount to $550, they should find for the plaintiffs.
This instruction was based on the assumption that the transaction between Mrs. Martin and the appellees was, as by the wi’itten contract it purported to be, a mere renting of the instrument, and that therefore the title had not passed out of the appellees. If, however, the writing upon its face shows that the transaction was a sale and not a renting, it is immaterial what name the parties chose to give it.
The sum of $400 for one month’s rent of an instrument valued by both parties at $550 is preposterous, and when *434 we add to that the stipulation that the renting is to continue for eleven months unless sooner terminated by the appellees, and that the rent contracted to be paid for that time when added to the $400 paid in hand makes up the sum agreed on as the price, and that Mrs. Martin had the privilege of becoming the purchaser at any time during the term upon paying the agreed rent, which was to be credited on the purchase-price, there can be no' room'to doubt that the real transaction was intended to be and was a sale, and that the device of calling it a renting was resorted to in order to secure the payment of the $150 of purchase-money not paid in hand, and that at best its effect was to give the appellees a lien as against Mrs. Martin for the unpaid purchase-money.
The case of Chism v. Woods (Hardin, 532), cited by counsel, was a very different case from this. Woods, so far from selling or agreeing to sell the horse there in contest to May, who sold him to Chism, negatived an intention to part with the horse by taking from May a covenant to return him. May had no title himself nor pretense of title, and of course could not invest his vendee with title, whereas, in this case, the transaction shows a sale, and that being shown, it does not matter whether the parties intended the title to pass or not; the sale being completed by an agreement as to the price and terms of payment and delivery of possession to the vendee, the law, in furtherance of public policy and to prevent frauds, will treat the title as being where the nature of the transaction required it should be.
This case is unlike that of Vaughn v. Hopson (10 Bush, 337), except in the fact that the controversy there as here arose out of an attempt to evade the law which requires liens in favor of one person upon personal property belonging to and in the possession of another to be recorded in order to render such liens valid against innocent persons.
The well-defined policy of the law is to have as few secret- *435 liens and claims upon property as possible, that the title may be readily and safely transmitted from one to another. This is in the interest of trade as well as opposed to fraud and collusion.
Registration laws have been provided which furnish ample and cheap facilities for securing liens, and at the same time enable the vigilant to protect themselves, especially in a case like this, from imposition and fraud. There is therefore no hardship in holding that all persons shall comply with those laws, or suffer the consequences of the failure to do so.
Judgment reversed, and cause remanded for new trial upon principles not inconsistent with this opinion.