HORACE F. CARPENTER *vs.* CHARLES H. SCOTT, Deputy Sheriff.

A. conveyed to B. personalty under an agreement purporting to be a lease, by the terms of which certain payments were to be made by B. to A., at fixed times.   In case B. failed to pay as provided, A. might take possession of the personalty.   On the expiration of the lease, B., having complied with its terms, was to receive a bill of sale of the personalty.

Pending the lease, B. mortgaged the personalty to C.   Subsequently the last payment was made by B. to A., and B. received a receipted bill of sale from A.   A. immediately attached the personalty in an action against B., whereupon C. replevied the personalty.

*Held,* that the so-called lease was a conditional sale.

*Held,* further, that B. acquired under this conditional sale rights of which A. could not deprive him, and which, in the absence of any stipulation forbidding it, B. could sell or mortgage.

*Held,* further, that on the last payment the title to the personalty vested in B., whose mortgage became valid, and took precedence of A.'s attachment.

*Williams* v. *Briggs*, 11 R. I. 476, and *Cook* v. *Corthell*, 11 R. I. 482, explained and distinguished.

REPLEVIN.   Heard by the court, jury trial being waived.   The facts involved appear in the opinion of the court.

The parties litigant waived a jury trial, and stipulated that "if said Carpenter mortgage is decided to be valid as to said rolling mill, then Carpenter is to have judgment for his costs; if, on such trial, his said mortgage is decided not valid as to said rolling mill, then Charles H. Scott is to have judgment for restoration and costs, and damages not to exceed twenty-five dollars, the case to be tried at the October Term, 1881, of the Supreme Court."

*December* 31, 1881. MATTESON, J. This is an action of replevin to recover possession of a rolling mill, attached by the defendant, a deputy sheriff. On the 17th day of November, 1879, the Willets Manufacturing Company delivered to John Anthony the mill in question under an agreement, purporting to be a lease, by which Anthony was to pay them for the mill five hundred dollars, in twenty monthly instalments of twenty-five dollars each, the first on the date named and the rest on the 17th day of each succeeding month, with interest at seven per cent. per annum. If Anthony failed to make any payment within five days after the date specified for such payment, the Willets Manufacturing Company might terminate the contract and take immediate possession of the mill. At the expiration of the lease, Anthony, having complied with its conditions, was to receive a bill of sale of the mill. At the date of the delivery of the mill to Anthony, he was a member of a partnership composed of Thomas Anthony, Thomas J. Linton, and himself. The business of the partnership was at that time, and until the 11th day of March, 1880, continued to be, transacted in the name of John Anthony. The contract for the mill, though in his name, was for the benefit of the partnership, and the partnership funds were used for the first payment, and for the successive payments of the instalments as they became due. On the 11th day of March, 1880, the partnership, under the name of John Anthony & Co., executed and delivered to the plaintiff a mortgage, signed by each of the partners, and purporting to convey, besides their other property, the mill in question, " subject to a certain claim of the Willets Manufacturing Company." In July following John Anthony withdrew from the partnership, and the business after that date was conducted under the name of Thomas Anthony & Co. On the 22d day of June, 1881, the last instalment of the rent, or

price, of the mill was paid, and the Willets Manufacturing Company gave a receipted bill of sale of it to Thomas Anthony & Co. This bill of sale named John Anthony as the vendee, and acknowledged payment of the price by Thomas Anthony & Co., for John Anthony. On the same day the Willets Manufacturing Company brought suit against John Anthony for an indebtedness of his to them, and delivered the writ to the defendant for service, which was made in part by attaching the mill replevied in this suit.

The question raised by the foregoing facts is, whether the mortgage to the plaintiff, in so far as it purports to convey the rolling mill, is valid as against the attachment of the Willets Manufacturing Company. We think it is. Such a transaction as that above described, by which the mill in question passed into the possession of John Anthony, though in form a lease, is regarded in law as a conditional sale. *Goodell* v. *Fairbrother*, 12 R. I. 233; *Currier* v. *Knapp*, 117 Mass. 324; *Greer* v. *Church & Co.* 13 Bush (Ky.), 430, 433, 434. Under it the vendee acquires, not only the right of possession and use, but the right to become the absolute owner upon complying with the terms of the contract. These are rights of which no act of the vendor can divest him, and which, in the absence of any stipulation in the contract restraining him, he can transfer by sale, or mortgage. Upon performance of the condition of the sale, the title to the property vests in the vendee, or in the event that he has sold, or mortgaged it, in his vendee, or mortgagee, without further bill of sale. *Day* v. *Basset*, 102 Mass. 445, 447; *Crompton* v. *Pratt*, 105 Mass. 255, 258; *Currier* v. *Knapp*, 117 Mass. 324, 325, 326; *Chace* v. *Ingalls*, 122 Mass. 381, 383. It follows from these principles, that immediately on payment of the last instalment of the price, the title to the rolling mill vested in John Anthony, or in him and his copartners, it is immaterial which, and that, thereupon, the plaintiff's mortgage became valid, and entitled to priority over the attachment of the Willets Manufacturing Company subsequently made.

The defendant contends that the plaintiff's mortgage is invalid as against the attachment, because the plaintiff had never taken possession of the rolling mill under it. In support of this claim

he cites *Williams* v. *Briggs,* 11 R. I. 476, and *Cook* v. *Corthell,* 11 R. I. 482. These cases are, however, widely different from the present. They do, indeed, hold that, at law, a mortgage of personal property to be subsequently acquired conveys no title, unless possession of the property when acquired is given to, or taken by, the mortgagee. They rest upon the familiar maxim, that no one can grant, or charge, that which he does not have. At the execution of the mortgages the mortgagors had no interest whatever in the property, the title to which was involved in these suits. It was property which was to come into their possession, and in which they were to acquire an 'interest, in the future, and which might not have been in existence, even, when the mortgages were made. In the present case, on the contrary, the mortgagors at the making of the mortgage had the possession of the property, with the right to its possession and use, and the right to become its absolute owners on complying with the conditions of the sale. These rights constituted an actual, present interest in the property, which, as we have seen above, is capable of transfer by sale or mortgage.

In accordance with the stipulation of the parties, judgment is rendered for the plaintiff for costs.

*Judgment for plaintiff for costs.*

*Simon S. Lapham,* for plaintiff.
*Ballou & Jackson,* for defendant.