SINKER, DAVIS & CO. v. JOHN M. COMPARET ET AL.

(Case No. 1690.)

1. CONDITIONAL SALE — DELIVERY.— It would seem that when goods are sold at a fixed price, to be paid on a certain day, and delivery is made upon an agreement, express or implied, that, until the price is paid, the title is to remain in the vendor, payment becomes a condition precedent, and until payment the title to the property is not vested in the purchaser.

2. SAME — PURCHASER IN GOOD FAITH.— In such case, the vendor who has been guilty of no laches may, in the absence of statutory enactment, reclaim the goods when the price has not been paid, even from one who has purchased them, or secured thereon a mortgage lien from the vendee in good faith and without notice.

3. SAME — STATUTE OF FRAUDS.— But under our statute of frauds, when possession passes with the conditional purchase, a reservation in the vendor of the ultimate ownership in default of payment will be unavailing, when the instrument evidencing the conditional sale is not recorded, as against subsequent creditors of the vendee without notice. As to creditors, the contract of sale is within art. 2468, R. S., and deemed fraudulent.

APPEAL from Blanco. Tried below before the Hon. L. W. Moore.

Appellant brought this suit as a private corporation against John M. Comparet, Henry Habenicht and Frederick Kuhne, on the 6th day of August, 1881; and afterwards made Benjamin, Thomas and Phil. P. Cage and Benjamin Brigham and C. A. Brown, defendants, to recover certain machinery described in "Exhibit A," a part of petition, or in the alternative to enforce an equitable or mortgage lien against the property.

It alleged that, on the 19th day of March, 1878, it sold to ap-

pellee Comparet the property (of the value of $1,880) for that sum, upon the express condition that appellant did not part with, nor should Comparet acquire, any title whatever to the property until fully paid for; and in default of the payment or any part thereof, appellant or its agents might take possession of and move the property and sell the same to the highest bidder for cash, applying the same to the payment of the debt or any balance due thereon and expenses of sale, etc. That Comparet had failed to pay $790 and interest of purchase money; that on or about the 3d day of January, A. D. 1881, appellees Habenicht and Kuhne wilfully and unlawfully, without any right or authority of law, and with the intent of injuring and harassing appellant, and with full notice of appellant's claim and right to the property, took possession thereof, which property was then in Blanco county and in the possession of appellee Comparet, who held the same for the use and benefit of appellant. That Habenicht and Kuhne ever since that date had been in possession of the property, using and appropriating the same to their use and benefit, to appellant's damage $5,000.

Appellant alleges that appellees Cages, Brigham and Brown, since the institution of suit, took possession of the property in connection with Habenicht and Kuhne and were setting up some title or claim thereto.

Prayer was made for judgment against appellees for the recovery of the property or its value, with damages and costs, and if it should be decided that appellant was not entitled to recover it, judgment was prayed against Comparet for the debt, interest, attorney fees and costs, and against all of appellees, foreclosing the equitable or mortgage lien and for sale of the property to satisfy judgment.

Appellees Habenicht and Kuhne amended, pleading general denial, and, as special defense, that on the 6th of February, A. D. 1878, being the owners of lots 5 and 6, in block 11, of the town and county of Blanco, Texas, with a grist, flouring and saw-mill and gin machinery thereon, they sold said lots and machinery to appellee Comparet for $2,100, due in four years from that date. That Comparet, as a further consideration, agreed with appellees Habenicht and Kuhne within six months from that date to erect on the lots a good second-class steam flouring and grist country merchant mill; and to secure payment of $2,100 and interest, Comparet gave to them a mortgage lien on the lots and machinery, and the mill to be erected thereon. That the debt had not been paid or the mortgage released; that on the 2d day of March, 1878, appellees Habenicht and Kuhne loaned to Comparet, to be used and invested in the

mill on the lots, $1,000, payable on 1st January, 1879. That Comparet executed and delivered to them his note and mortgage upon the lots, machinery, mills and appurtenances to secure payment of the $1,000 and interest. That again on the 10th day of May, A. D. 1878, appellees Habenicht and Kuhne loaned to said Comparet $1,000 more, to be used in the building of the mill, and took his note, payable in two years from date, together with his third mortgage on the lots, machinery and appurtenances, to secure payment. That the mortgages were properly acknowledged and recorded in Blanco county at the times of their execution and delivery.

That Comparet erected the mills on the lots, using thereon the machinery sold to him as aforesaid, and expending the money loaned him in purchasing material and erecting the building for the mills prior to 28th of August, 1880. That at this time appellees Habenicht and Kuhne brought suit in the district court of Blanco county, Texas, against said Comparet on said two notes and second and third mortgages, and on the 7th day of September, A. D., 1880, recovered judgment against Comparet for $2,423.60, with costs, and a foreclosure of the two mortgages on said lots, buildings, machinery, mills, etc., and on the 3d day of January, A. D. 1881, procured an order of sale to issue thereon, and caused same to be levied upon said lots, machinery, etc., and the same was by the sheriff of said Blanco county sold on the 1st Tuesday in February, 1881, at which sale the appellees Habenicht and Kuhne became the purchasers of the property for $1,062 credit on said order of sale. That said sheriff conveyed said property to them. That if they ever had possession of the various items of machinery described in appellant's petition, the same were attached to, connected with, used and employed about running the mill at the time of the institution of this suit and rendition of judgment and levy and sale, and that they acquired possession thereof by virtue of judgment, levy, sale and deed.

The conclusions of fact, found by the court, were as follows:

" 1st. The note declared upon, as described in plaintiffs' petition and memorandum of contract of sale of certain machinery to J. M. Comparet, constituted a conditional sale; title to be perfected only upon payment; date being March 19, 1878, unacknowledged and unrecorded until May 23, 1881.

" 2d. The machinery was shipped May 31, 1878, and delivered about June, 1878.

" 3d. The defendants, Habenicht and Kuhne, on 6th February, 1878, sold certain lots with some machinery to said Comparet for $2,100,

on a credit of four years. By the terms of that sale, Comparet was to erect a good flouring and grist mill, and place therein for that purpose the proper machinery within six months; and for the security of said purchase money gave a mortgage not only on the property so purchased, but also upon any and all machinery he was to purchase for said mill, and placed same upon record same day of execution.

"4th. Habenicht and Kuhne advanced $1,000 to Comparet on March 2, 1878, and took then, as security, mortgage upon all the property conveyed in the original sale, and also upon any and all machinery which Comparet was to furnish, by his original contract, which was recorded March 2, 1878.

"5th. Habenicht and Kuhne advanced a further sum of $1,000 to Comparet, May 10, 1878, and took a like mortgage for its security, which was recorded same day.

"6th. Sinker, of the firm of Sinker, Davis & Co., was present in Blanco and examined the mill site and machinery purchased by Comparet from plaintiffs after said sale and first mortgage for $1,000; it was then that said plaintiffs made a verbal agreement to furnish the necessary machinery to said Comparet.

"7th. Habenicht and Kuhne filed their suit to foreclose their second and third mortgages, August 28, 1880; recovered their judgment September 7, 1880, and sold the property under an order of sale first Tuesday in February, 1881, and became the purchasers for $1,062, which was credited upon their judgment.

"8th. There was testimony tending to show defendants had knowledge of the claim of plaintiffs' lien on the machinery they sold to Comparet, when they recovered this judgment, and on the day of sale public notice of said claim was given. .

"9th. Habenicht and Kuhne had no notice at the time of the sale to Comparet, or when they advanced their several sums of money and took their several mortgages, of any purchase of this machinery by Comparet from plaintiffs, or the terms of such sale, nor does the testimony show they had any knowledge up till about the time of filing of their suit of foreclosure.

"10th. The machinery purchased of plaintiff was placed into position in said mill about July, 1878."

The conclusions of law found by the court were:

"That although the sale by plaintiffs to Comparet of certain machinery was conditionally, and no title passed to the purchaser, yet, as Habenicht and Kuhne had no notice of this purchase or its terms, and as it was a part of the consideration of their sale to Comparet

and the several mortgages for advancing, that Comparet was to purchase the necessary machinery, and the same being duly recorded when the machinery was sold by plaintiffs, such lien as plaintiffs had was subordinated to the lien of Habenicht and Kuhne, and such machinery became fixtures and the title thereto passed under the foreclosure to said Habenicht and Kuhne. And the judgment is accordingly entered, that plaintiffs take nothing as against Habenicht and Kuhne, but that plaintiffs have judgment against Comparet upon his note."

*Nix, Storey & Storey,* for appellants.

No briefs on file for appellees.

WALKER, P. J. COM. APP.— The sale of the machinery by the plaintiffs to Comparet was a conditional sale. The terms of the contract between them were substantially the same as those stated in the case of Griffith & Wedge *v.* Morrison & Matthews, 58 Tex., 51, where it was held that the sale was a conditional sale; which case see and the authorities there cited. The machinery was sold and delivered to Comparet under an express stipulation that the vendors parted with no title, nor was any acquired by Comparet, until payment was made of the price agreed to be paid as evidenced by the notes given by the purchaser. The contract provided that in case of non-payment the plaintiffs were entitled to take possession of the machinery and sell the same at public sale on thirty days' notice, the proceeds to be applied to the payment of amount remaining due, and the remainder, after defraying expenses of sale, to be paid to said Comparet. It is remarked in a note in Benjamin on Sales, 3d Amer. ed., p. 288, that " It has been suggested that this class of contracts may be treated either as conditional sales, by which the property was not to vest in the purchasers until they should pay or give security for the price, or as executory contracts of sale to be completed on the performance of the same condition. Upon either construction the property in the goods is not changed." See Wilde, J., in Dresser Manuf. Co. *v.* Waterston, 3 Met., 9, 17; Grover, J., in Ballard *v.* Burgett, 40 N. Y., 314; Ferguson *v.* Clifford, 37 N. H., 86; Adams *v.* O'Connor, 100 Mass., 515, 518.

It is held, it seems, by very numerous authorities, that " where goods are sold at a fixed price, to be paid on a certain day, and delivery is made upon an agreement, express or implied, that until the price is paid the title is to remain in the vendor, payment is a condition precedent, and until performance the property is not vested

in the purchaser. The vendor in such case, if guilty of no laches, may reclaim the goods, where the price has not been paid, even from one who has purchased them or taken a mortgage of them from his vendee in good faith and without notice." Benj. on Sales, note (3d Amer. ed.), p. 286 (note to sec. 320).

The operation and effect of this rule in some of the states is qualified by statutory provisions, as in Maine, Iowa and Vermont. See note, *supra*. The doctrine stated is not, however, uniformly recognized. In Illinois the doctrine is, that *bona fide* purchasers, and even attaching creditors without notice, of the conditional vendee, acquire a right superior to that of the vendor. See note above cited and authorities there referred to. The Kentucky doctrine is, that as between vendor and vendee the condition as to title is good, but as to innocent purchasers the condition is inoperative. Vaughn *v.* Hopson, 10 Bush (Ky.), 337; Green *v.* Church, 13 id. (Ky.), 430.

The lien of the defendants Habenicht and Kuhne was protected under our statute of frauds.

Article 2468, Rev. Stat., provides that . . . "where any reservation or limitation shall be pretended to have been made of a use of property by way of condition, reversion, remainder or otherwise in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent within this chapter, and that the absolute property is with the possession, unless such loan, reservation or limitation of use of property were declared by will, or by deed or other instrument of writing duly acknowledged or proved and recorded."

The contract in writing between the plaintiffs and Comparet was one clearly embraced within the statute. In it was contained, "by way of condition," a "reservation" of the ultimate beneficial use and ownership of the property thus sold, for the benefit of the plaintiffs; and according to its terms the possession was to be in Comparet, the purchaser. Comparet received the machinery, took and kept possession of it from June, 1878, under the contract, until he was dispossessed of it under the sale made by the sheriff under an order of sale in February, 1881; and this action was not brought until August 6, 1881. During all this time, the contract relied on by the plaintiffs was unrecorded, nor did Habenicht and Kuhne have actual notice or knowledge of its terms until about the time of filing their suit against Comparet to foreclose their mortgages on the 28th day of August, 1880.

It appears, therefore, that the possession of the machinery remained in Comparet, the purchaser, for the space of more than two years, under a contract which we characterize as being within the statute of frauds, and which was not recorded, nor of the terms of which did Habenicht and Kuhne, the creditors of Comparet, have notice during that period of time. It follows, that such possession of the property in question, as to said creditors, "shall be taken to be fraudulent."

Habenicht and Kuhne took and relied upon their mortgages on said machinery under the facts thus shown to exist during and before the period of time when Comparet thus held possession and the apparent ownership of the machinery, and they will be protected against the claim of the plaintiffs to assert title to or lien upon it; and notice given to the former by the latter, subsequent to the time limited by the statute within which the contract shall have ·been recorded, as to the terms of the same, cannot affect the question. See Grace *v.* Wade, 45 Tex., 526, 527.

It is assigned as error that the judge erred in his conclusions of law that the machinery sued for became fixtures, and the title thereto passed under the foreclosure of Habenicht and Kuhne.

The evidence applicable to this subject was, that the mills and machinery in the mill-house, bought of Sinker, Davis & Co., was attached to the engine by a belt, and could be detached and moved without injuring the house or the machinery purchased of said Habenicht and Kuhne, but that the mill could not be operated without that or like machinery.

The history concerning the procurement of this machinery, as well as its subsequent continued use, shows that it was obtained and put into the mill with the intention of establishing a permanent flouring and grist mill in the building where it was placed. Quoting from 3 Wait's Act. & Def., 377, it is there said: "The true rule in determining what are fixtures in a manufacturing establishment, where the land and buildings are owned by a manufacturer, is in a recent case stated to be, that where the machinery is permanent in its character, and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building; and that whatever is essential to the purposes for which the building is used will be considered as a fixture, although the connection between them be such that it may be severed without physical or lasting injury to either. Green *v.* Phillips, 26 Gratt. (Va.), 752; 21 Amer. Rep., 323. In other words, it is the permanent and habitual annexation, and not the manner of fastening, that de-

termines when personal property becomes a part of the realty. Brennan v. Whitaker, 15 Ohio St., 446; Laflin v. Griffiths, 35 Barb., 58; McRae v. Cent. Nat. Bank, 66 N. Y. (21 Sick.), 489; 50 How. (N. Y.), 51; Pierce v. George, 108 Mass., 82; Parsons v. Copeland, 38 Me., 537. And see Voorhees v. McGinnis, 48 N. Y. (3 Sick.), 278, where it was held that, where the facts disclose that machinery is intended to be a permanent accession to the freehold, the execution of a chattel mortgage on it is not sufficient to overcome this presumption or raise the contrary one by an intent to preserve its personal character; it may nevertheless become a part of the freehold and pass to the purchaser with it.

Subjected to the test of the rules which are thus stated, we think the machinery in question was a fixture which passed with the freehold, and there was no error.

We report for the affirmance of the judgment.

AFFIRMED.