TYLER et al. v. THOMAS et al. (No. 8992.)*

Court of Civil Appeals of Texas. Galveston.
May 31, 1927.

Rehearing Denied July 6, 1927.

**1. Homestead ⬳35—Where husband and wife occupied one of four apartments in building owned by wife, husband's homestead right on wife's death extended to entire building (Const. art. 16, § 51).**

Where wife owned building containing four apartments, and husband and wife occupied one of apartments as homestead at time of wife's death, husband was entitled to claim entire building as homestead, under Const. art. 16, § 51, provided his right to homestead exemption had not been forfeited.

**2. Homestead ⬳73—Homestead character of lot attaches to all parts of building erected thereon (Const. art. 16, § 51).**

Where lot on which house is located constitutes homestead, under Const. art. 16, § 51, no part of house standing thereon can be subjected to forced sale, as homestead right extends to all improvements, without limit as to their value.

**3. Homestead ⬳73—House becomes part of realty to which it is attached, and cannot be separately sold.**

House, which is attached to realty, becomes part of land itself, and cannot be seized and sold separately from land.

**4. Trespass to try title ⬳35(2)—All defenses, except limitation, may be proved under plea of not guilty, where no affirmative relief is prayed (Rev. St. 1925, arts. 7372, 7373).**

Where defendant makes no prayer for affirmative relief, any matter of defense, except limitation, may be proved under plea of not guilty, under Rev. St. 1925, arts. 7372, 7373.

**5. Homestead ⬳213—Evidence of defendant's homestead rights in property to which plaintiff sought to recover possession held admissible under plea of not guilty (Rev. St. 1925, arts. 7372, 7373).**

In suit to recover title and possession to property, evidence of defendant's homestead rights in property in controversy *held* admissible under plea of not guilty, under Rev. St. arts. 7372, 7373, where no affirmative relief was prayed.

**6. Homestead ⬳181½—Where testatrix, owning property, had occupied it, with husband, as homestead, evidence that she left home and filed divorce suit several days before death was of itself insufficient to make issue of abandonment, in action by devisee to recover possession.**

Where husband and wife had resided for several years on premises owned by wife as her separate property, occupying apartment in building as their home, fact that wife left home several days before death, and filed suit for divorce against husband, who continued to live there, was insufficient to make issue for jury as to abandonment of homestead, in action by

wife's devisee to recover possession from husband.

**7. Homestead ⬳181½—Question of abandonment of homestead is generally for jury's determination.**

Issue of abandonment of homestead is generally issue of fact, to be determined by jury.

**8. Homestead ⬳181(1)—Burden is on party contesting homestead character of premises to prove abandonment.**

If property has once been impressed with homestead character, burden is on party seeking to avoid homestead exemption to prove that it has been abandoned.

**9. Homestead ⬳214—Proof that husband mistreated wife, causing wife's abandonment of premises owned by her and occupied as homestead, held admissible in action by devisee under wife's will to recover possession (Const. art. 16, § 51).**

In action by devisee to recover property devised, as against testatrix's husband claiming life estate in property as homestead, under Const. art. 16, § 51, excluding testimony of husband's cruel treatment of testatrix, which resulted in disruption of family and abandonment of home by wife, *held* error; testimony being admissible to prove husband had forfeited right to homestead exemption on wife's death.

**10. Homestead ⬳216—Evidence that cause of testatrix's leaving premises occupied as homestead was husband's cruel treatment makes question of abandonment for jury in action by devisee against husband to recover possession.**

In action by devisee under will to recover property claimed by testatrix's husband as homestead, issue of abandonment of homestead is for jury, under evidence indicating testatrix left premises several days before her death on account of husband's cruel treatment.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Mrs. Ida Mae Tyler and husband against Scott C. Thomas and another. From a part of the judgment rendered in favor of defendants, plaintiffs appeal. Reversed and remanded.

Gill, Jones & Tyler, of Houston, and F. A. Williams, of Galveston, for appellants.

W. P. Hamblen, of Houston, for appellees.

LANE, J. This suit was brought by Mrs. Ida Mae Tyler, joined pro forma by her husband, Lee Tyler, against Scott C. Thomas and A. M. Foute. The petition is in the ordinary form of petitions in suits of trespass to try title, and by it plaintiffs seek to recover from Scott Thomas title and possession of lot 8, in block 4, in subdivision of 10-acre lot No. 7 of the J. S. Holman survey, on south side of Buffalo Bayou, in the city of Houston, in Harris county, Tex., together with all improvements thereon. Recovery is also sought against both Thomas and A. M. Foute for cer-

tain funds in the hands of Foute, collected as rents from the property involved in the suit.

A. M. Foute filed no answer. ' Scott C. Thomas answered only by plea of general denial and not guilty.

It seems to be agreed by all parties that the building on the lot involved in the suit was a building under one roof; that it had but two entrances from the outside, one from the front, and the other from the rear; that it was divided into four apartments. It is shown by the undisputed evidence that at the time of the death of Mrs. Bessie L. Thomas, to wit, on the 30th day of September, 1925, she was the wife of Scott C. Thomas, as she had been for a number of years prior thereto; that at the time of the death of Mrs. Bessie L. Thomas she owned the property in question in her own separate right; that from July, 1922, up to the 12 days before her death, she and her husband, Scott C. Thomas, occupied one of the apartments in the building as their home; that on or about the 18th day of September, 1925, 12 days before her death, Mrs. Thomas left her home and went to the home of her daughter, Mrs. Ida Mae Tyler, and in a few days thereafter, about 5 or 6 days, filed suit for a divorce against Scott C. Thomas, and almost immediately went to Kerrville, and died on the 30th day of September, 1925, about 5 or 6 days after filing said suit; that Scott Thomas never left the building, but remained there at all times. It was shown by the undisputed evidence that, during the occupancy of one of said apartments by Mrs. Thomas and her husband, they rented the others to three several tenants, who occupied them with their respective families. Mrs. Tyler is the only child of Mrs. Thomas, and Mrs. Thomas left a will, which was duly probated, by which she bequeathed the property in question to Mrs. Tyler.

Only two witnesses testified, the plaintiff, Mrs. Tyler, and defendant Foute, both as witnesses for the plaintiffs.

Mrs. Tyler testified that her mother, Mrs. Thomas, moved into the apartment house in July, 1922, and lived in it up to 12 days prior to her death; that she had been ill for some time before she died; that she went to Kerrville for her health, and died there; that her mother was the wife of Thomas in name only; that she married Thomas, and that from July, 1922, they lived in the apartment house together up to 12 days before her death.

Foute testified that Mrs. and Mr. Thomas lived in one of the apartments in the building in question; that the building was on one lot of ground; that Mrs. Thomas lived there all the time he was there, but not up to the day of her death; that Mr. Thomas continued to live in the building up to, and continually thereafter up to, the date on which he testified.

A jury was impaneled and sworn to try the cause, but after the plaintiffs had introduced their evidence, showing the facts above stated, and rested, the court discharged the jury and rendered judgment for Mrs. Ida Mae Tyler for the title to the property, but denying her judgment for the possession of the same, or for rents, and decreed that she was not entitled to recover anything against Scott C. Thomas and A. M. Foute for rents, and that Scott C. Thomas was the owner of said rents. It was also adjudged that Scott C. Thomas should be vested with the possession of the property "during his lifetime, or so long as he may elect to use or occupy said property as his homestead."

From so much of the judgment as is in favor of Scott C. Thomas and A. M. Foute, Mrs. Tyler and husband have appealed.

[1] By appellants' eleventh proposition, which we shall first consider, they contend that, as the building on the lot sued for consisted of four apartments and was appurtenant to the lot, the separate property of Mrs. Bessie L. Thomas at the time of her death, by whose will the title to the same passed to Mrs. Ida Mae Tyler, and as one, and only one, of said apartments was ever occupied by Thomas and his deceased wife, Bessie L. Thomas, as their home, the other three being rented to and occupied by three several tenants and their respective families, Scott Thomas, the surviving husband, was in no event entitled to a homestead right in or to any part of the building after the death of his wife, as against Mrs. Tyler, except the one apartment which was occupied by him and his wife, prior to her death, as their home, and therefore the court erred in not so holding.

[2, 3] The contention of appellants is settled adversely to them by the decision in the case of Forsgard v. Ford, 87 Tex. 185, 27 S. W. 57, 25 L. R. A. 155. The decision was written by Judge Brown, of our Supreme Court, wherein it is said:

"The question presented is: Can a part of a house standing on a lot that is homestead be subjected to forced sale under our Constitution and laws? The house upon lot 5 was a fixture, within the meaning of the law, and as such was a part of the land itself. A sale of the land would carry the house and every part of it. Hutchins v. Masterson, 46 Tex. 555, 26 Am. Rep. 286; Sinker, Davis & Co. v. Comparet, 62 Tex. 476. The house, being attached to and a part of the realty, could not be seized and sold separately from the land. Willis v. Morris, 66 Tex. 628, 1 S. W. 799, 59 Am. Rep. 634. The Constitution of this state (article 16, § 51) defines an urban homestead in this language: 'The homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value $5,000 at the time of their designation as a homestead, without reference to the value of any improvements thereon: Provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family: Provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.'

"By this provision of the Constitution the exemption is placed upon the lots, and not upon the improvements. This is emphasized by the further provision that the value of improvements shall not be included in determining the right. The use of the lot or lots impresses upon the land the homestead character. Whatever is so attached to the land as to become a part of it must partake of the character of the land, and, if the land is subject to sale, the improvements upon it will be subject; if, however, the land cannot be sold, neither can the structures built upon it as permanent buildings, adapted to its use, and intended by the owner for such purposes.

"It would not be contended, if this lot were not exempt from forced sale, that the sheriff could seize and sell the two rooms under these executions, nor would it be asserted that a sale of the lot would not carry the whole house. If the house, as a whole, be a part of the realty, as it evidently is, how can it be said that a portion of the house is not a part of the land; and if it be a part of the lot, under what rule of procedure can it be separated from the lot for the purposes of seizure and sale under execution?

"Let us suppose that the house should be destroyed by fire. The purchasers of these rooms would not be entitled to participate in the erection of another building upon the lot. The result of such a doctrine would be that the land under the house would be protected by the Constitution, but the use of a part of it would not be. The purchaser of the two rooms would not dare, without the consent of the other, to set foot on the soil, for if he did so he would be a trespasser; and the owner of the soil upon which the house stands would likewise be a trespasser if he, without consent, entered the two rooms which rest upon the soil."

Other grounds urged by appellants as causes for a reversal of the judgment are: First, that, since defendant Scott Thomas answered only by general denial and plea of not guilty, he was not entitled to recover possession of the property sued for as his homestead; the answer of general denial and plea of not guilty being insufficient to raise the issue of homestead. Second, that, if the answer of Scott Thomas was sufficient for him to predicate his right of possession of the property as a homestead, it was nevertheless error for the court to render judgment for him for such possession, in that there was no satisfactory proof that the property was the homestead of him and his wife, Bessie L. Thomas, at the time of the death of said wife. Third, the court erred in refusing to permit appellants to introduce the testimony of a number of persons for the purpose of showing that Scott C. Thomas, by his cruel conduct toward his deceased wife, Mrs. Bessie L. Thomas, had caused her to abandon her home some 12 days before her death, and to file a suit against him for a divorce, thus showing that any homestead rights he might have had in the separate property of his wife had been forfeited by reason of the fact that he had by such conduct disrupted and destroyed the family relations and the elements of a home.

[4, 5] We shall dispose of the contentions last mentioned in the order stated. Articles 7372 and 7373 of our Revised Civil Statutes of 1925 provide as follows:

Article 7372: "The defendant in such action may file only the plea of 'not guilty,' which shall state in substance that he is not guilty of the injury complained of in the petition filed by the plaintiff against him, except that, if he claims an allowance for improvements, he shall state the facts entitling him to the same."

Article 7373: "Under such plea of 'not guilty' the defendant may give in evidence any lawful defense to the action except the defense of limitation, which shall be specially pleaded."

In the present case the plaintiffs sued for title and possession of the property. The defendant denied the right of plaintiff to recover possession, but made no prayer for affirmative relief. In such case it has been uniformly held that any matter of defense, except limitation, may be proven under plea of "not guilty." Lumpkins v. Coats (Tex. Civ. App.) 42 S. W. 580; Miller v. Knowles (Tex. Civ. App.) 44 S. W. 927; Taffinder v. Merrell, 18 Tex. Civ. App. 661, 45 S. W. 477; Hardy v. Brown (Tex. Civ. App.) 46 S. W. 385; Wilkins v. Owens, 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867; Kauffman v. Brown, 83 Tex. 41, 18 S. W. 425; Ryan v. Lofton (Tex. Civ. App.) 190 S. W. 752.

We therefore overrule appellants' contention that appellee Thomas could not prove, under his plea of "not guilty," his homestead rights in the property in controversy.

[6] We also overrule appellants' contention that there was no proof that the property, though once the homestead of Scott Thomas and wife, was such at the time of the death of the wife. It was shown by the undisputed evidence that Scott C. Thomas and Bessie L. Thomas were husband and wife for several years prior to and up to the time of the death of the wife; that they occupied the apartment in the building in question as their home from July, 1922, up to a few days before the death of the wife, at which time she left her home and went to stay with her daughter and only child, Mrs. Ida Mae Tyler; that in about 5 or 6 days after leaving her home Mrs. Thomas filed a suit praying for the dissolution of her marriage relations with Scott C. Thomas, but she died in a few days after the suit was filed, and no divorce was granted; that Scott C. Thomas remained in the home at all times, and still remains therein, claiming the same as his home as the surviving husband of Bessie L. Thomas, deceased.

[7, 8] It is stated in Hibbs v. City National Bank (Tex. Civ. App.) 293 S. W. 350, at page 352, that the general rule is that the issue of abandonment of a homestead is one of fact to be determined by the jury, and if property has once been impressed with home-

stead character, the burden is upon the opposing party to prove abandonment. The soundness of the rule so stated, we think, cannot be successfully questioned. We do not think that proof only that the wife left the home a few days before her death, and after leaving it and prior to her death she filed a suit for divorce from her husband, who continued to live in the home, was sufficient to carry the issue to the jury as to whether the property was the homestead of Scott C. Thomas at the time of the death of his wife.

[9, 10] But we feel constrained to sustain appellants' contention that the court erred in refusing to permit the plaintiff Ida Mae Tyler and several other witnesses to testify to acts of appellee amounting to a studied course of vexatious and cruel treatment by him of his deceased wife, which resulted in the disruption of the family, the destruction of the elements of a home, and the abandonment of the home by the wife. We think the proffered testimony was admissible and material upon the issue as to whether appellee Thomas had forfeited his right to homestead exemption in his wife's separate property on her death. This being true, it follows that the testimony should have been admitted, and in such event it would have been clearly the duty of the court to have retained the jury, to which he should have submitted the issue raised by such testimony.

As authorities tending to support the contention of appellants that the proffered evidence was erroneously rejected, counsel for appellants cite Earle v. Earle, 9 Tex. 630; Trawick v. Harris, 8 Tex. 312; Sears v. Sears, 45 Tex. 557; Newland v. Holland, 45 Tex. 588; Sackman v. Sackman, 143 Mo. 576, 45 S. W. 264. In the Sears Case, it is said:

"However liberal may be the construction which should be given the homestead laws, it cannot be supposed that they were intended for the benefit and protection of a party who has without excuse or justification broken up and destroyed the very relation upon which they are founded, and for the security and well being of which they are intended. If, as says Mr. Justice Lipscomb, 'the wife has wantonly destroyed the harmony of the matrimonial relation, and voluntarily withdrawn from the narrow, but sacred, precincts of that home in which she was protected by the law, * * * and is no longer found a priestess ministering at the household alter,' she is estopped from claiming the immunities conferred upon those recognizing and fulfilling these sacred duties. The fact of appellant's separation from her husband was not controverted. Whether she did so with or without cause was a question for the jury."

In Sackman v. Sackman, supra, it is said:

"Where a husband, by criminal conduct towards his wife or ill usage of her, gives her just cause to live separate and apart from him, and causes her so to do, she is entitled to be protected in the enjoyment of her real estate, and the rents, issues, and profits thereof, whether the legal title is vested in her, or she is simply the equitable owner, and the husband holds the legal title in trust for her."

Because of the error of the court in rejecting the proffered testimony, the judgment is reversed and the cause remanded.

Reversed and remanded.