In re Lynn A. JESTER, Debtor.

The ESTATE OF Lynn A. JESTER, in Bankruptcy, By and Through Charles R. SIMPSON, III, Trustee, Plaintiff,

v.

Barbara FIRKINS, Lynn A. Jester, Defendants.

Bankruptcy No. 3-82-01086.
Adv. No. 3-82-0283.

United States Bankruptcy Court,
W.D. Kentucky.

April 25, 1983.

Charles R. Simpson, III, trustee.

Mark Edison, Shepherdsville, Ky., for defendant Firkins.

William Stephen Reisz, Louisville, Ky., for debtor.

## MEMORANDUM

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Far from a weighty factual dispute or a complex legal issue, the instant case confronts us only with a need to lend legal interpretation to a contract document. Styled a "lease and purchase agreement", it must be construed to create either a lease or a purchase, but not both. The case brings to mind the parable of the peach, being plucked from the bin marked peaches and pears, which pleaded persuasively that it was a pear.

We have here an odd document. While technically proficient in its draftsmanship, grammar and organization, it is drawn within a most curious conceptual framework.

The grantor or seller under this contract is also identified as lessor, and the buyer is the lessee. In that regard the document is unlike the classic sale-leaseback agreement, so highly effective for tax and other purposes, in which the parties are cast in the respective roles of seller/lessee and buyer/lessor.

In any event, in the instrument at hand, the buyer (or lessee) is the debtor and defendant, a dentist by profession, and the seller (or lessor) is a codefendant in an action by the trustee.

When Dr. Lynn Jester established his dental practice in 1976, he did so in space previously occupied by a Dr. Firkins, who had died the year before. Dr. Firkins' widow, the plaintiff in this action, owned the building and certain of its contents. In a turnkey operation and acquisition of a practice, the young dentist moved into the completely outfitted quarters, buying (or leasing) the dental equipment, inventory, files, records, office furnishings and fixtures.

The contract was signed which now comes here for inspection.

Dr. Jester filed bankruptcy in May, 1982. Although the dentist continues to drill in his same chair even as we write, he has neither purchased the equipment from the trustee nor agreed to pay him rent for its use, nor can he, because of the conflicting claim of Mrs. Firkins.

The trustee initiated this action against Dr. Jester and Mrs. Firkins to establish his interest in the equipment and furnishings, pleading in the alternative to sell it outright or to be paid a reasonable rental for its use, depending upon the nature of the property interest vested in Dr. Jester.

This is the background against which we read the instrument, in order to determine whether the items now being used by Dr. Jester are "property of the estate" within the meaning of Sec. 541 of the Bankruptcy Code, and if so, the nature of the property interest devolving on the trustee.

■ For reasons which will be explained, we hold that the items in question are indeed property of the estate, and that the trustee is vested with legal, not merely equitable, title to them.

Within the four corners of the document at hand we find the following attributes of a sale: (1) references throughout to "purchase" and "purchase price"; (2) a fixed principal amount to be paid by the buyer, $75,910.69; (3) annual interest of seven percent; (4) requirement of execution of a note having those terms; (5) provisions for retirement of principal and accrued interest over a 12-year period in annual installments; (6) a prepayment-without-penalty clause; and (7) authority for the seller to execute and record, and terminate upon satisfaction, a financing statement.

The same instrument carries the following indicia of a lease: (1) Use of the word "lease" in the title, the third literal paragraph and paragraph numbered 8, and (2) provision in a conclusory, remedial paragraph that upon default Mrs. Firkins "may consider all payments made under this

agreement as rentals for the reasonable value of the use of the equipment and property herein and as liquidated damages by the second party as lessee..."

On a balanced reading the "lease and purchase agreement" reflects the intent of the parties that legal title pass, subject to a security interest retained by the grantor.

Arguing that the document created a lease, Mrs. Firkins offers as proof her letter to Dr. Jester of December 26, 1981, purporting to terminate the agreement and declaring that "all future monies received ... will be payment for the rental and use of said equipment only." The self-serving correspondence does no good. As with the peach that claimed it was a pear, so with this letter.

We are, rather, persuaded by the argument of the trustee, who cites a hoary line of authority dating back to *Greer v. Church & Co.,* 76 Ky. 430, 13 Bush 430 (1877), to the effect that what appears to be a lease may in reality be a contract of sale. Not to be outdone, we suggest that the theoretical origins of our holding today may be of even more bewhiskered antiquity, certainly as old as *res sua nimini servit,* and perhaps as old as the common law of property itself.

In retrospect, the instrument we have examined appears to have been "loaded" with an intentional ambiguity designed to have the best of both possible worlds, thereby gaining neither. Its one certain value, as witness this opinion, is that it makes work for judges.

█ Based upon the foregoing observations, we exert no effort in holding that if an instrument nominally designated a "lease" nevertheless transfers legal title to one who thereafter is adjudicated bankrupt, the property thus transferred becomes "property of the estate" under 11 U.S.C. § 541, subject to the claims of the trustee. An appropriate turnover order will be entered today.